# CHARLESTON.

WILLIAM DAVID SHIRLEY, *Infant, etc. v.* NORFOLK & WESTERN RAILWAY COMPANY, *a corporation, et al.*

(No. 6667)

Submitted February 11, 1930. Decided February 18, 1930.

*Harman & Howard,* for plaintiff in error.

*F. M. Rivinus, Strother, Sale, Curd & St. Clair* and *Goodykoontz & Slaven,* for defendant in error.

HATCHER, JUDGE:

The plaintiff herein is a child of seven years. Two years ago, while he was playing at a sandpile along defendant's track, he slipped, fell and had his hand severed by defendant's train. This is an action to recover damages for that injury. The jury returned a verdict for $30,000.00 which was set aside by the trial court as excessive.

This is the second time the case has been before this Court. The former opinion is reported in 107 W. Va. 21, which see for a history of the case and a map of the track, sandpile, etc.

Plaintiff's counsel contend that the case, as developed on the second trial, presents the following grounds for recovery: the defendant knew of the existence of the sandpile and that children were accustomed to play there; it was defendant's duty to provide a lookout on trains passing the sandpile to avoid injury to children in dangerous proximity to the track; at the time of the injury, defendant's train was backing by the sandpile without a lookout; plaintiff was at play on the sandpile in a position of danger from the train as the leading car passed; and as a proximate result of defendant's failure to maintain a lookout the plaintiff was injured. The defendant concedes that there is support in law or fact for all of plaintiff's premises, except the one asserting that plaintiff was in a position of danger when the leading car passed the sandpile.

The witnesses for plaintiff who testified as to his position on the sandpile are (1) his mother, who saw him and his brother, James, sitting down in the sand at the rear of the sandpile close to some boards about four or five minutes before the accident (the boards walled in the sand and were eighteen feet from the track); (2) Domanick Paradise, a neighbor, who saw the children playing on the sandpile six or seven feet from the track shortly before the accident (the time is calculated by plaintiff's attorneys at from one and a half to two minutes); and (3) plaintiff's brother, James, now aged nine years, who was with plaintiff at the time of the injury. As James is the only eye witness, his evidence in so far as it relates to the position of the boys as the train backed in, is given in full.

"Q. You were over there playing in the sand pile for a while, were you? A. Yes, sir. Q. Were you right close—You know where the planks are? A. Yes. Q. Were you there for a while? A. Yes, sir. Q. Were you there when the train went by? A. Yes, sir. * * * Q. Were you sitting on the ground? A. Sitting in the sand. Q. Just playing in the sand? A. Yes, sir. Q. But sitting down? A. We was running and throwing sand at each other. Q. You had been throwing sand at each other? A. Yes, sir. Q. That is you had been throwing sand at each other part of the time and part of the time you had been sitting down, had you not? A. Yes, sir. Q. Did you get up after the train passed by? A. Yes, sir. Q. And how many cars had gone by when you got up? A. I don't know. Q. Several. A. Yes, sir. Q. About half the train? A. Yes, sir. Q. If there had been as many as eighteen cars in that train had as many as nine gone by when your brother got up? A. Yes, sir. Q. Are you sure of that? A. Yes, sir. Q. Do you know which one of the cars it was that hurt your brother? A. No, sir. Q. Do you know whether it was the first or second or third or fourth car? A. No, sir."

As the evidence is conflicting, and the verdict is in favor of plaintiff, we will consider only the testimony of his own witnesses in passing upon his contention. In doing so, we must not permit sympathy for this unfortunate little boy to allay the ordinary rules of law. He cannot be permitted to recover on mere surmise. He must sustain the burden, just as an adult, of establishing clearly a recoverable case. Under the law as stated in *Angeline* v. *R. R. Co.*, 99 W. Va. 85, 43 A. L. R. 43, the defendant was under no duty to provide lookouts for him along the side of its train. Consequently it is incumbent on him to show that he was in a position of danger from the train which would have been apparent to a lookout on the leading car. According to the evidence of his brother, James, they were sitting down at the rear of the sandpile as the leading car passed. His testimony is very indefinite as to when the plaintiff left that position in relation to the passing of the leading car; but his statements will not bear the inference that the plaintiff had arisen and was run-

ning around the sandpile in close proximity to the track at the time the leading car passed. If Paradise observed these children after their mother did, they had evidently returned to the place where she saw them (close to the boards), before the leading car passed by. Was that place dangerously near the train? Their position on the sandpile cannot be assumed to have been one of peril merely because the accident ensued. The situation should be judged independently of the accident. No presumption of negligence arises from the mere happening of an accident. *Ferrell* v. *Solski*, 278 Pa. 565. There is no inherent danger from a passing train to one fifteen feet distant. He may even move about freely with safety in a zone closer to the train than fifteen feet. The danger of children in the proximity of a moving train arises from their absorption in play. That childish obsession, however, may cause a place fifty or one hundred feet from a track to be just as perilous to childhood as one only fifteen feet away; yet, can we say that those remote positions are dangerously proximate to a passing train? Upon observing children at a place which at the time is free of danger from the movement of cars, trainmen are not required to anticipate that the children might probably come into a dangerous position before the cars have entirely passed. Such a requirement would necessarily entail steps by the trainmen to insure the safety of the children and would paralyze the movement of trains. *Angeline* v. *R. R. Co., supra,* 89, 91. A dangerous position has been defined as "one from which danger or accident may be reasonably apprehended, not may possibly happen". *Hancock* v. *R. R. Co.,* 91 N. Y. S. 601, 606. Human experience does not demonstrate that children, when sitting down fifteen feet from a railroad track, arise and run heedlessly towards a passing train, with such frequency as to make the contingency probable. Therefore, children cannot ordinarily be said to be in a perilous position at that distance from a train. The mother of these children, because of her knowledge of their habits, was in better position to judge whether they were in a position of danger than a jury, or the court. Her observation of them just before the accident, had been made for the express purpose of ascertaining whether "they were safe".

She evidently considered them safe, at the rear of the sand-pile, as she permitted them to remain there without even an admonition. Where watchful motherhood saw no peril to her children, it would be demanding too much of defendant that it should have foreseen peril in their situation.

If the plaintiff's position gave no indication as the leading car was passing that he would probably approach the train later, the presence of a lookout on the leading car would not have averted the accident. The failure to maintain a lookout thereon was therefore not the proximate cause of his injury, and the judgment of the trial court is affirmed.

As the verdict should have been set aside on the merits of the case, a discussion of the *quantum* of the award would be profitless.

*Affirmed.*