J. M. TAYLOR

*v.*

VIRGINIA MAE TAYLOR

(No. 9716)

Submitted September 11, 1945. Decided November 20, 1945.

*E. L. Phillips* and *Burton & Smith*, for appellant.

HAYMOND, JUDGE:

The challenge of the plaintiff, the appellant, to the jurisdiction of the Circuit Court of Mercer County to entertain this suit for divorce, instituted by him in that court, against his wife, defendant and appellee, on March 6, 1944, presents for decision the principal question on this appeal. Plaintiff seeks a divorce on the ground of adultery. The answer and cross-bill of the defendant charge plaintiff with habitual drunkenness and cruel or inhuman treatment. By final decree entered in the case on January 3, 1945, the Circuit Court overruled the motion of the plaintiff to dismiss the answer and cross-

bill of the defendant, and, on the evidence introduced by the defendant and her witnesses, the plaintiff offering no evidence at the hearing on the merits, granted the defendant a divorce from the plaintiff, awarded the custody of the six year old son of the parties to the wife, and required the plaintiff to pay $28.00 per month for the support of the child and an additional fee of $50.00 to defendant's attorney. The plaintiff attacks the decree on the sole but vigorously asserted ground that the trial court was without jurisdiction to enter any judgment in the case except an order of dismissal. No brief in behalf of defendant has been filed in this Court.

Plaintiff and defendant, while residents of Mercer County, West Virginia, where they had lived for several years previously, were married at Narrows, in Giles County, Virginia, November 6, 1937. They immediately returned to Mercer County where they lived together until the latter part of December, 1940, or the early part of January, 1941, when they moved to the City of Washington, District of Columbia, taking with them their small child, now six years old, and all their furniture and personal effects. The testimony is conflicting as to their intention to return, the plaintiff maintaining that they did not, the defendant that they did, intend to return to Mercer County after the termination of their stay in Washington. Regardless of the testimony of each of the parties on this vital point, it is clear, from their conduct and the circumstances during the time they spent there, that they intended to remain in Washington indefinitely. While living in that city he worked at various occupations, including some time as a carpenter in the employ of the Federal Government, and she, at first, devoted her time to her household duties and later also became a Federal employee. During their stay in Washington he made several short trips to other localities in search of new employment, from which, however, he always returned to their home in that city. After a time differences arose between them which led to a temporary separation in the summer of 1943. A reconciliation was

effected about the last of December, 1943, at which time he moved from Washington to the Town of Tazewell, in Tazewell County, Virginia, and obtained employment as a coal miner at Bishop in that county. At Tazewell he rented a four room furnished cottage and there he took his tools and his personal belongings, with the intention of remaining while he held his new employment. She left Washington accompanied by the child and went to live with the plaintiff at his new place of residence some time between December 27, 1943, and January 3, 1944. On January 5, 1944, he sustained a broken leg which prevented him from continuing his work at the mine. While he was confined to his home because of this injury a bitter quarrel arose between them on or about January 28, 1944, and she left him and the child and returned to Washington. They have not since lived together or co-habited.

Following this final separation, and in the early part of February, 1944, he returned to Mercer County, West Virginia, bringing the child with him. It is established that when they left Tazewell County, neither of the parties had any intention of returning, and neither of them ever did return, to that place. She continued to stay in Washington and was living there when the suit was instituted, the case heard and the final decree of January 3, 1945, entered. After living with his sister in Mercer County from the early part of February, 1944, until about thirty days after the filing of his bill of complaint on March 6, 1944, the plaintiff returned to Washington where he was residing at the time of the entering of the final decree.

There is some evidence, which is not very clear, that the plaintiff continued to own an interest in real estate in Mercer County after he first moved to Washington. The plaintiff voted by an absent voter's ballot, transmitted by mail, at the general election in Mercer County in 1944, while he was staying in Washington, and he has never tried to vote at any place other than in Mercer County. The defendant has never exercised her right

to vote. The plaintiff told his counsel when this suit was instituted that he was a resident of Mercer County, West Virginia, and his sworn bill of complaint contains an allegation to that effect. At the hearing upon his motion to dismiss this suit, he repeatedly testified that he was not, and had not been, a resident of Mercer County since he first moved to Washington; but he did say, on cross-examination, that he had no other residence than Mercer County at the time he brought this suit. In her sworn answer, in which she seeks a divorce on the grounds of habitual drunkenness and cruel or inhuman treatment upon the part of the plaintiff, the defendant says that the plaintiff is a resident of Mercer County, West Virginia, denies that she is a non-resident of West Virginia, and, though admitting that she is working in Washington, claims her residence as Mercer County, West Virginia. The answer, filed in open court on March 16, 1944, was subscribed and sworn to by the defendant before a notary public of Mercer County on March 6, 1944, the same day this suit was instituted. The defendant testified that she always claimed Matoaka, Mercer County, West Virginia, as her residence and that, while she and her husband were living in different places, he never claimed any place other than Matoaka as his residence.

The acts of adultery charged in the bill of complaint against the defendant are alleged to have been performed in the District of Columbia; and it is undisputed that the acts of each party complained of by the other, and denied by each, if in fact committed, occurred outside the State of West Virginia.

In assailing the final decree of the Circuit Court as void because that court was without jurisdiction to entertain this suit, the plaintiff contends that at the time of its institution he was not a resident of Mercer County, West Virginia; that the defendant then was a non-resident of this State and was actually residing in the District of Columbia; that the cause of action arose out of this State; that this suit is one in which the defendant

can not be personally served with process within this State; and that, since neither party was, or had been, for any requisite period of time, an actual bona fide resident of this State, the Circuit Court had no jurisdiction to grant the relief prayed for by either party or to enter any decree in the case except an order dismissing it.

In this State the principle is firmly established that jurisdiction of courts of equity to entertain divorce cases exists only by virtue of the statute which confers such jurisdiction. *Nield* v. *Nield,* 126 W. Va. 430, 28 S. E. 2d 825; *Anderson* v. *Anderson,* 121 W. Va. 103, 1 S. E. 2d 884; *Parks* v. *Parks,* 109 W. Va. 138, 153 S. E. 242; *White* v. *White,* 106 W. Va. 569, 146 S. E. 376. Thus it becomes necessary, in the decision of this case, to consider and apply the pertinent provisions of the statute which appear in Chapter 48 of the Code of West Virginia. After expressly conferring jurisdiction of suits for divorce upon the Circuit Courts of this State, the statute, Code, 48-2-8, provides:

"No suit for divorce shall be maintainable:

"(a)  If the cause for divorce is adultery, whether the cause of action arose in or out of this State, unless one of the parties, at the commencement of suit, is a bona fide resident of this State; or

"(b)  If the cause for divorce is other than adultery, unless one of the parties was, at the time the cause of action arose, a bona fide resident of this State and has been such a resident for at least one year next preceding the commencement of suit; or

"(c)  If the cause for divorce is other than adultery, unless one of the parties has, since the cause of action arose, become an actual bona fide resident of this State and has continued so to be for at least two years next preceding the commencement of suit, and, in addition, it be shown either that the alleged cause for divorce was recognized, in the jurisdiction in which such party resided at the time the cause of action arose, as a ground for absolute divorce or for

> the same relief asked for in the suit in this State, or that the alleged cause of action arose more than five years before the commencement of suit: Provided, however, That in any case in which the defendant cannot be personally served with process within this State, such suit shall not be maintainable unless the plaintiff at the time the cause of action arose was an actual bona fide resident of this State and has been such a resident for at least one year next preceding the commencement of suit, or that since the cause of action arose has become such a resident and has continued so to be for at least two years next preceding the commencement of suit."

Under the terms of the above quoted statute, if the plaintiff and the defendant, when they left their home in Mercer County and removed with their child to the City of Washington, did not intend to return, as plaintiff now contends, but did intend to remain outside the State of West Virginia permanently or for an indefinite period of time, they then ceased to be bona fide residents of this State within the meaning of the statute, and neither one of them could maintain a suit for divorce against the other in the Circuit Court of Mercer County, for, the parties not being residents, that court was without jurisdiction to entertain a suit by either of them. Domicile, 19 C.J. 397, 406-407. If, however, both the plaintiff and the defendant, or the plaintiff himself, at the time they moved from Mercer County, did not intend to give up or change their residence and did not intend to remain away permanently or indefinitely, but left with the intention of returning to their former place of residence, and they, or he, continued to entertain such intention while the plaintiff and the defendant continued to live together as husband and wife, there would be no change of residence by either of them from Mercer County, West Virginia. Domicile, 19 C.J. 407.

The word residence, as used in divorce statutes, is almost universally construed to be the equivalent of domicile. *Boos* v. *Boos*, 93 W. Va. 727, 117 S.E. 616;

Domicile, 19 C.J. 397. And generally, upon the theory of identity of person, the law fixes the domicile of the wife by that of her husband and denies to her, during cohabitation, the power of acquiring a domicile of her own separate and apart from his. Domicile, 19 C.J. 414.

Numerous admissions by each party appear in the pleadings and in the evidence upon the question of residence. These were introduced without objection from either party. These admissions, except to the extent that they tend to deny jurisdiction or to defeat the divorce, are inadmissible and can not be taken into consideration in determining the jurisdiction of the trial court, Code, 48-2-11; *Trough* v. *Trough,* 59 W. Va. 464, 53 S.E. 630; *Marcum* v. *Marcum,* 113 W. Va. 374, 168 S.E. 389.

Notwithstanding the conflict in the testimony of the plaintiff and the defendant on the question of the residence of each at the time of the institution of this suit, it sufficiently appears, in the opinion of the Court, that both the plaintiff and the defendant, as disclosed by their conduct at the time of their removal from Mercer County, and subsequently, while they were living in Washington and in Tazewell County, Virginia, ceased to be residents of Mercer County and of this State. If the proof ended at that point neither party could have maintained a suit for divorce in the Circuit Court of Mercer County at the time of the commencement of this litigation. Code, 48-2-8. It is also satisfactorily shown that the defendant, at the time of the institution, and during the course, of this litigation in the Circuit Court, was not a resident of this State. As to the status of the plaintiff, it is true that until 1941 or 1942 he continued to own real estate, or an interest therein, in Mercer County, and that he cast his vote there at the general election in the fall of 1944 by mailing his absent voter's ballot from Washington, where he was actually living at the time. But these circumstances are not conclusive and must be considered merely as facts which tend to show his residence in this State, and which do not bal-

ance or overcome the other facts and circumstances which clearly indicate the contrary.

But even though the plaintiff ceased to be a resident of Mercer County, West Virginia, after his removal to Washington in the latter part of 1940 or the early part of 1941, and that status continued while he and his wife lived in that city, and subsequently, for approximately thirty days, in Tazewell County, Virginia, it is necessary to determine whether, at the commencement of this suit, on March 6, 1944, his status of a non-resident of West Virginia continued to exist, or whether, by his actions and intention at the time of and subsequent to his removal from Tazewell County, Virginia, to Mercer County, West Virginia, he had become a resident of this State at the commencement of this suit.

It is not disputed that after he moved to Tazewell County, Virginia, in December, 1943, where his wife and child joined him and where she continued to live with him for about thirty days, he and she finally separated, and that within a few days after she returned, in the latter part of January, 1944, to Washington, he gave up his residence in Tazewell County, quit his work at that place, taking his young son with him, and came back to Mercer County to live. At that time he was still suffering from the injury to his leg which he had sustained on January 5, 1944. He went to the home of his sister. He had no other place to make his home. He remained there, with no idea of changing his residence, until more than a month after he brought this suit. These facts convince the Court that at the commencement of this suit the plaintiff had established his residence in Mercer County and that at that time he was a *bona fide* resident of West Virginia within the meaning of Paragraph (a), Section 8, Article 2, Chapter 48 of the Code, which has been referred to and quoted earlier in this opinion. It is to be noted that, under the statute, no definite period of time is required to establish a legal residence. Likewise, in the absence of any statutory regulation, no definite period of residence or specified length of time in a

particular place is necessary to establish a domicile; but, when accompanied with the element of intent, any residence, however short, will be sufficient to establish a domicile, even if it is but for a day. Domicile, 19 C.J. 403-404; Domicile, 17 Am. Jur. 603-604.

It is also pertinent to observe that no definite period of time or specified length of residence in this State is required to enable a plaintiff to institute a suit in the Circuit Court of the county in which he resides when the cause for divorce is adultery. Code, 48-2-8(a), and the discussion in the Revisers' Note. The conditions surrounding the residence of the plaintiff, at the commencement of this suit, however, must be appraised in the light of the provisions of Paragraph (c) of the above quoted statute. That part of the statute expressly declares that in any case in which the defendant can not be personally served with process within this State the suit for divorce is not maintainable unless the plaintiff, at the time the cause of action arose, was an actual bona fide resident of this State and has been such a resident for at least one year next preceding the commencement of the suit, or that, since the cause of action arose he has become such a resident and has continued so to be for at least two years next preceding the commencement of the suit. It is manifest that in this case the plaintiff was not an actual bona fide resident of this State at the time the cause of action arose and that he has not been such resident for at least one year prior to the institution of this suit. Therefore, if, as counsel for the plaintiff in their brief vigorously assert, this case is one in which the defendant, being a non-resident, can not be personally served with process within this State, the Circuit Court did not have jurisdiction and its decree must be reversed. But is this a case in which the defendant can not be personally served with process within this State? It is significant that the language of the statute does not require the actual service of process. Its words are "cannot be personally served with process within this State, * * *". Counsel for plaintiff say that it appears from the record that, as the defendant was living in the

City of Washington at the time the suit was instituted, no process was ever personally served upon her; and they argue that no process could have been so served. A painstaking examination of the record does not support that position. The process and the return are not contained in the record. The only reference in the record to the return of process is the endorsement on the back of the bill of complaint made at April Rules, 1944, to the effect that no process was returned. The record, however, does disclose two circumstances that indicate strongly that the defendant was in Mercer County, West Virginia, and could have been personally served with process within that county before the return day of the process, which appears to have been at April Rules, 1944. One is the certificate of a notary public of Mercer County that the defendant subscribed and swore to the allegations of her answer before him on March 6, 1944, the day the suit was instituted; the other is the recital in a decree entered by the court on March 16, 1944, to the effect that the defendant moved the court for leave to file, and did file, her answer in the case on that day. But these are not all the facts disclosed by the record on this point. It shows that the defendant filed her answer at April Rules, 1944. This was a personal appearance by her in the case on or before the return day of the process; and the determination of the return date depended upon whether the process was returnable at the first rules following its date or at rules held later within the general ninety day limit prescribed by law for the return of process; except in particular situations governed by statute which do not exist in connection with the writ in this suit. Code, 56-3-5. The record also reveals that the defendant personally appeared and testified at the hearing upon the motion of the plaintiff to dismiss the suit for lack of jurisdiction and at the hearing of the cause upon its merits, both of which occurred in open court on December 29, 1944, at which time she could have been served with alias or other process in the case, provided the process was regularly continued and no hiatus occurred that would operate as a discontinuance.

Code, 56-3-21; *Dunaway* v. *Lord*, 114 W. Va. 671, 173 S. E. 568. The recitals in the final decree entered January 3, 1945, also show affirmatively that the cause came on to be heard upon process duly had and executed upon the defendant, as required by law. Code, 56-3-12, provides that any summons against any person may be served as a notice is served under Code, 56-2-1; and that provision of the statute relates to personal service. *Board* v. *Hedrick*, 116 W. Va. 222, 179 S. E. 809. Since the process could only be duly had and executed upon the defendant within this State, and since the defendant, during the pendency of this suit in the Circuit Court, had no usual place of abode in West Virginia at which the process could be delivered or posted, according to either of the two methods prescribed by the statute for obtaining substituted service upon a person not found at his usual place of abode at the time service is attempted to be made, the only reasonable interpretation of the recitals in the decree that process was duly had and executed upon the defendant, as required by law, in the absence of any showing in the record of the contrary, is that process was served upon the defendant by the only other method mentioned in the statute, and that is by delivering a copy to the party in person. Accordingly the meaning and effect to be given to the language of the recitals are that the defendant was personally served with process in this suit within this State. This Court has heretofore held that recitals in a decree are a verity and can not be attacked by evidence outside the record. *Central District & Printing Telegraph Co.* v. *Parkersburg, etc. Railway Co.*, 76 W. Va. 120, 85 S.E. 65; *White* v. *White*, 66 W. Va. 79, 66 S. E. 2; *Jones* v. *Crimm*, 66 W. Va. 301, 66 S. E. 367; *Darnell* v. *Flynn*, 69 W. Va. 146, 71 S. E. 16. This doctrine, however, has been modified because of the recession by this Court from the verity rule as to the sheriff's return of service of process, where it clearly and convincingly appears that the return is false, to the extent stated by this Court in the case of *Nuttallburg Smokeless Fuel Co.* v. *First National Bank*, 89 W. Va. 438, 109 S.E. 766, and in other

subsequent decisions. *Lanham* v. *Home Auto Co.*, 115 W. Va. 415, 176 S.E. 604. Without further discussing the modification of the verity rule since the *Nuttallburg* case as to the force and effect of recitals in decrees and without tracing it to its present state of development, it is sufficient to say that the principle is well settled by the decisions of this Court that such recitals, though not conclusive, are presumptively correct and will prevail in the absence of record evidence which necessarily contradicts them. *Stepp* v. *State Road Commission*, 108 W. Va. 346, 151 S.E. 180; *State* v. *Bailey*, 85 W. Va. 165, 101 S.E. 169. There being no evidence here in contradiction of the recitals of the final decree of the Circuit Court of Mercer County, they are presumed to be true and correct and will be given that effect. Thus this case is not one in which the defendant can not be personally served with process within this State, and, therefore, it is not within the provisions of Paragraph (c) of the above quoted statute. The provisions of Paragraph (a) of the statute apply to and govern this case, and at the time of its commencement the plaintiff was a bona fide resident of this State and, as such, he was entitled to institute and maintain this suit in the Circuit Court of Mercer County.

Consideration of all the facts and circumstances in evidence, as shown by the record, leads to the conclusion that the Circuit Court of Mercer County had jurisdiction to entertain and decide this case.

The action of the trial court is affirmed for an additional reason. As heretofore pointed out, the evidence upon the jurisdictional issue is conflicting. When the material facts are in dispute, as here, the findings of the trial chancellor who heard the testimony of the witnesses and observed their demeanor while testifying should not be disturbed on appeal. The evidence supports the decision of the Circuit Court upon the facts of this case. The general rule, often stated and consistently adhered to by this Court, is that in equity the finding of fact of the trial chancellor will not be disturbed on appeal

unless it is clearly wrong or against the preponderance of the evidence. *Kincaid* v. *Evans*, 106 W. Va. 605, 146 S.E. 620; *Spradling* v. *Spradling*, 118 W. Va. 308, 190 S.E. 537; *Shipper* v. *Downey*, 119 W. Va. 591, 197 S.E. 355; *Pickens* v. *O'Hara*, 120 W. Va. 751, 200 S.E. 746. This rule applies and governs in suits for divorce. *Hurley* v. *Hurley*, 127 W. Va. 744, 34 S.E. 2d 465; *Crouch* v. *Crouch*, 124 W. Va. 331, 20 S.E. 2d 169.

The trial court having jurisdiction of the case, it was within its power to hear and determine the merits and to grant the defendant the relief prayed for in her answer and cross bill, as it did, even though the defendant was not, at the time of the trial, a bone fide resident of this State. The court retained its jurisdiction for that purpose notwithstanding the action of the plaintiff in dismissing his bill of complaint, which he did, on his own motion and by leave of the court, at the conclusion of the hearing of the motion to dismiss the case upon the ground that the court had no jurisdiction to entertain it. In *Hale* v. *Hale*, 104 W. Va. 254, 139 S. E. 754, this Court dealt with a situation analogous to that which arose in the trial court in this case, and in so doing incorporated this language in its opinion:

> " 'Where an action for divorce is brought by a resident of the state of the forum against a non-resident it is generally held that a divorce may be granted the non-resident on his or her cross bill though a statute in general terms requires the complainant in an action for divorce to have been a resident of the state for the designated time. And it has been held that the abandonment or dismissal of the original bill or petition does not oust the court of jurisdiction to grant a divorce to the non-resident cross petitioner. The jurisdiction of the court to entertain a cross bill by a non-resident defendant is based on the familiar principle that a court of equity having acquired jurisdiction of the parties and of the subject matter of the suit will retain and exercise such jurisdiction until the equities of all the parties are meted out to them.' 9 R.C.L., page 404, Sec. 201. 'Gen-

erally speaking a statute making residence of plaintiff a prerequisite to the exercise of divorce jurisdiction does not preclude the non-resident defendant from filing a cross bill and obtaining a decree of divorce against the plaintiff, provided plaintiff has resided in the jurisdiction the requisite time. Nor will a non-resident defendant be deprived of his right to relief on a cross bill by a· dismissal or discontinuance of the original petition.' 19 C.J., page 27, Sec. 238. The principle is the same whether the non-resident is the defendant to the original bill or the cross bill of the resident party. It would be an anomaly to hold that the court had jurisdiction to grant one of the parties a divorce but not the other."

For the reasons stated the judgment of the Circuit Court of Mercer County is affirmed.

*Affirmed.*