GEORGIA L. SUTTON

*v.*

THEODORE EMMETT SUTTON

(No. 9667)

Submitted September 25, 1945.   Decided November 27, 1945.

*Wm. Bruce Hoff,* for appellant.

*M. E. Boiarsky* and *E. F. Folger,* for appellee.

HAYMOND, JUDGE:

The plaintiff seeks a reversal in this Court of a decree of the Circuit Court of Wood County which dismissed her bill of complaint on the ground that the court did not have jurisdiction of the case.

On November 29, 1942, the plaintiff, then Georgia L. Goddard, aged forty-nine, and the defendant, Theodore Emmett Sutton, aged sixty-seven, were married at St. Petersburg in Pinellas County, Florida. It was her first, and his third, marriage. Following the marriage they lived together as husband and wife in that county and state until April 1, 1943, when they began a trip by automobile to Wood County, West Virginia, where the plaintiff had resided until just before her marriage to the defendant. They reached Williamstown on or about April 5, 1943, and there separated upon their arrival. The plaintiff thereafter remained at her former residence in that locality, and since April 5, 1943, the parties have not lived together as husband and wife. Following their separation, the plaintiff, on May 19, 1943, instituted this suit in the Circuit Court of Wood County, West Virginia.

She asks a divorce from the defendant on the ground of cruel or inhuman treatment. Process was issued and personally served upon the defendant in that county. He appeared and filed two pleas in abatement, by which he denied that the Circuit Court of Wood County had jurisdiction of the case. Issue having been joined upon the pleas and the general replication of the plaintiff, the matters arising thereon were heard by the court. By decree entered December 31, 1943, the court sustained the pleas in abatement, dissolved the temporary injunction which had been awarded the plaintiff on May 19, 1943, restraining the defendant from mortgaging, selling or otherwise disposing of his Williamstown property, and dismissed the bill of complaint at the cost of the plaintiff. From that decree she has appealed to this Court.

In and by the final decree the trial court found from the evidence: (1) That, at the time the plaintiff's alleged cause of action arose, the defendant was a bona fide resident of the State of Florida; (2) that the defendant had not been such a resident of the State of West Virginia for at least one year next preceding the

commencement of the suit; and (3) that the court did not have jurisdiction of the defendant and of the subject matter of the litigation.

The evidence, which is voluminous, is conflicting upon the issues raised by the pleas in abatement. The controlling question upon which the evidence centers is the domicile or residence of the defendant within the meaning of Code, 48-2-8(b), which provides that if the cause for divorce is other than adultery suit shall not be maintainable unless one of the parties was at the time the cause of action arose, a bona fide resident of this State, and has been such a resident for at least one year next preceding the commencement of the suit.

If the defendant, who is conceded to have had this domicile at Williamstown, in Wood County, West Virginia, for many years prior to the early part of the year 1941, at which time he asserts he gave up his residence at that place and established his domicile in Florida, in fact continued to retain his domicile in Wood County until the commencement of this suit on May 19, 1943, then he was a bona fide resident of this State within the terms of the statute. In that situation, the plaintiff, while living with him as his wife, was likewise a resident of Wood County; for in such circumstances, upon the theory of identity of person, the law fixes the domicile of the wife by that of her husband and denies her, during cohabitation, the power of acquiring a domicile of her own separate and apart from him. Domicile, 19 C. J. 414; *Taylor* v. *Taylor*, 128 W. Va. 198, 36 S.E. 2d 601, decided at this term of Court. Likewise her residence in Wood County continued without interruption after her return to, and their separation in, that county in April, 1943, where she has since made her home. If their status as to residence was that outlined above, as plaintiff vigorously contends, it is obvious that the Circuit Court of Wood County had jurisdiction of this suit.

If, however, the defendant terminated his domicile in

Wood County, West Virginia, on or about April 1, 1941, as he testified he did, and immediately thereafter established, and has since maintained, his domicile in the State of Florida, then neither the plaintiff nor the defendant was a bona fide resident of this State within the provisions of the statute, Code, 48-2-8 (b), at the commencement of this suit; and consequently the Circuit Court of Wood County was without jurisdiction to entertain the cause. That this was the actual status of both parties when this suit was instituted is the contention of the defendant.

In this jurisdiction, and generally, residence, as used in the divorce statutes, is treated as the equivalent of domicile. *Boos* v. *Boos*, 93 W. Va. 727, 117 S. E. 616; *Taylor* v. *Taylor*, supra; 19 C. J. 397. To ascertain and determine the domicile or residence of the defendant, at the time the cause of action arose and for at least one year next preceding the commencement of this suit, which, as above stated, bears upon and fixes the status of the plaintiff for the purpose of this case, it is necessary to recite and consider the salient facts disclosed by the evidence on that question.

Prior to the year 1933, the defendant had been engaged in business as a decorator. About that time he began to withdraw from that business and to devote his attention to the painting of pictures. As long ago as 1938, five years before this litigation began, he had ceased to be active in his earlier trade, and since then his interest and business activities have been directed chiefly to the art of painting. In 1927, while residing with his first wife and their two children in Williamstown, West Virginia, he began to spend a part of each winter in Florida. From 1927 to 1936 he and his family went to that State annually, except during two years, and on his visits there he lived in an apartment owned by one of his friends.

In 1938, his first wife died at his home in Williamstown. In January, 1940, he married a second time at

Ocala, Florida, and he and his wife traveled in that State and lived at the Sass Hotel in St. Petersburg, where they usually had their meals. They made various trips separately and together to other states, and one trip to Mexico. After that he came to Williamstown, staying about a month, and then joined his wife at her former home in Iowa. They returned to Williamstown in the summer or fall of that year and remained there until about November 1, 1940. After visiting in Iowa and California, they went back to Florida about January 1, 1941, and lived at the Sass Hotel in St. Petersburg. His second wife left him in March, 1941, and went to her former home in Iowa, and thereafter she and the defendant never lived together.

In May of that year he came back to Williamstown. He spent part of that summer in New York and in the fall he returned to St. Petersburg where he again lived and had his meals in the Sass Hotel. He testified that on January 1, 1941, he became a citizen of Florida and on April 1, 1941, a resident of that State, in order to exhibit his paintings to better advantage. He was a member of an art club in St. Petersburg, but did not join a similar organization in Wood County, West Virginia. On June 5, 1942, he sued his second wife for divorce in a Florida Court, alleging in his verified bill of complaint that he had been a bona fide resident of Pinellas County in that State for more than ninety days prior to the filing of the bill of complaint, and on November 27, 1942, the court entered a decree of divorce in which it was recited that he was a bona fide resident of that State. The following day he and the plaintiff, who, with knowledge of his pending suit, had accompanied him to Florida for the purpose of marriage when he should obtain a divorce from his second wife, applied for and obtained a license to marry in Pinellas County, Florida. In the sworn application for their marriage license, he gave his address as St. Petersburg, Florida, and she gave her address as Williamstown, West Virginia. They were married November 29, 1942, at St. Petersburg, and

lived together in Florida until April 1, 1943, when they began their trip to Williamstown.

Before the general election in 1942 the defendant, whose registration as a voter was in Wood County, West Virginia, told several persons that he was a citizen of Florida and for that reason could not vote in West Virginia. He did not vote in either State at that election. For the years 1941 and 1942, he filed his federal income tax returns with the Collector at Jacksonville, Florida. He spends more time each year in Florida than he does in West Virginia.

The defendant owned and still owns valuable property in Wood County and elsewhere in West Virginia, including the dwelling in which he lived when he was in West Virginia. All his furniture and household effects are located there. He often spoke of Williamstown as his home and gave that place as his address when registering for lodging during his travels. He owns no real estate or any other property in Florida except a few articles of clothing and some painting equipment and pictures. His principal investments are centered in or near Parkersburg, West Virginia, and nearby Marietta, Ohio; and in a bank at the latter place he keeps his only personal checking account. He pays his property and capitation taxes in Wood County in this State. He uses a West Virginia license for his automobile, and the address on his gasoline ration books is stated as Williamstown where his residence telephone is listed. When in Florida he subscribes for a newspaper published in Marietta, and his address as Williamstown was registered by his present wife, within his knowledge, with the West Virginia Society, while they were living together in Florida. He retains his membership in the Masonic Lodge in West Virginia, and continues to have his clothes made by a tailor in Marietta. His acquaintances in Wood County look upon him as a resident of that community. He has made provision for his burial and erected a monument in his cemetery lot in Williamstown.

Did the defendant establish his domicile or residence in Florida in April, 1941, and give up his residence in Wood County? The correct answer to this question is decisive of this case. It is pointed out by the plaintiff that the defendant owned or maintained no permanent place of dwelling in Florida. It is established, however, that the defendant, when in that State, customarily stayed at the Sass Hotel, where, without retaining permanent quarters or making the necessary reservations, he was always able to obtain the accommodations which he desired. The physical presence of a person, coupled with the intent to remain, is all that is required to acquire a domicile, and it is not material whether he is living in a house of his own, a rented house, or in a hotel. Minor, Conflict of Laws, Sec. 60. To establish a domicile by choice there must be residence in the new locality and an intention to remain there. Domicile, 17 Am. Jur. 500., The question is one of residence and intention. Both must occur in order that the domicile may be considered established. When residence and intent concur, the domicile is acquired. Domicile, 19 C. J. 401, 402. If a person leaves his domicile, and, while residing elsewhere, forms an intention not to return but to make his new residence his home permanently or for an indefinite period, he thereby establishes a new domicile, and in the absence of any statutory requirement, no definite period of residence or specified length of time in a particular place is necessary. When the requisite intent exists, any residence, however limited in duration, will establish a domicile. 19 C. J. 402, 404. One day is sufficient if the intent to remain exists. Domicile, 17 Am. Jur. 604. A change of domicile or residence depends upon the intention of the person concerned. *State v. Beale*, 104 W. Va. 617, 628, 141 S.E. 7, 141 S.E. 401.

Though the burden rests upon the defendant to establish, by competent proof, the allegations of his pleas to the jurisdiction of the trial court, analysis and consideration of all the evidence warrant the conclusion that he has successfully met that requirement. A man may re-

move from his place of residence and establish a domicile or residence elsewhere, and still own property, have important business or financial connections, leave his investments undisturbed, and even plan for his own burial, in the community in which he lived for a long period of time, without continuing to be a resident of the locality which he has left with the intention of staying away indefinitely. To deny him legal permission so to do would amount to a refusal to recognize the existence of common every day experience. Instances of the type mentioned above normally and frequently occur in almost every ordinary community. Here the defendant, after an active and reasonably successful business career, having reached the age at which many men desire to retire from their accustomed labors and spend their remaining years in more enjoyable and less exacting activities and surroundings, decided to leave his former home in Wood County and to establish his residence indefinitely in another and different type of community where, as he explains, he could more agreeably pursue a new course of conduct in which his chief interest centered. He gradually, but none the less intentionally, guided his steps and directed his attention from his former home in West Virginia to his new home in Florida. Whether this was to his detriment or to his advantage it is not the province of a court to say. Unquestionably he had the right to do as he wished and as he desired in that regard. In Florida he married, lived with, and divorced his second wife. There he and the plaintiff were married and there they spent all but a few days of their married life before their final separation.

Though the evidence discloses a large number of particular acts and some conduct of long duration which indicate the intention of the defendant to remain a resident of this State, yet the character of such acts and conduct is not clearly inconsistent with the existence of his intention to become a resident of Florida; and, in comparison with the other established facts and circumstances which tend strongly to establish his intention to

become a legal resident of that State, they are relatively unimportant and unconvincing in determining his domiciliary status.

From the evidence as a whole this Court has reached the conclusion that the defendant was a resident of Florida, and had not been a resident of West Virginia, within the meaning of the statute, for at least one year next preceding the commencement of this suit. Furthermore, the finding of the trial court, based upon conflicting evidence, is to that effect. When the material facts are in dispute, as here, the findings of the trial judge who heard the testimony of the witnesses and observed their conduct and demeanor while testifying should not be disturbed. No error of law appears, there is ample evidence on which to base the findings of fact, and they are not against the preponderance of the evidence. The rule is firmly established in this jurisdiction that in equity the finding of fact of the trial chancellor will not be disturbed on appeal unless it is clearly wrong or against the preponderance of the evidence. *Kincaid* v. *Evans*, 106 W. Va. 605, 146 S. E. 620; *Spradling* v. *Spradling*, 118 W. Va. 308, 190 S. E. 537; *Shipper* v. *Downey*, 119 W. Va. 591, 197 S. E. 355. The same rule applies in suits for divorce. *Hurley* v. *Hurley*, 127 W. Va. 744, 34 S. E. 2d 564. It is the settled law of this State that upon review, a finding of fact by a trial court, upon an issue submitted to the court in lieu of a jury, should be affirmed upon any reasonable theory supported by substantial evidence and reasonable inferences which may be drawn from such evidence. *Board of Education* v. *Insurance Co.*, 124 W. Va. 163, 19 S. E. 2d 448. In *Watkins* v. *Norfolk & Western Railway Company*, 125 W. Va. 159, 23 S. E. 2d 621, this Court said:

> "The finding and judgment of a court, acting in lieu of a jury, based on conflicting evidence, by which a plea in abatement, putting in issue the jurisdiction of the court, was sustained, will not be disturbed on writ of error, where no error of law appears and the finding

and judgment are not plainly against the clear preponderance of the evidence."

For the foregoing reasons the judgment of the Circuit Court of Wood County is affirmed.

*Affirmed.*