MARY JO TATE

*v.*

PAUL CURTIS TATE

(No. 12371)

Submitted May 11, 1965.        Decided June 22, 1965.

*Daughterty & Daugherty, Duncan W. Daugherty,* for appellant.

*Quinlan, Nelson & Williamson, H. G. Williamson, J. E. Wilkinson,* for appellee.

BROWNING, PRESIDENT:

Plaintiff, Mary Jo Tate, a native of Lincoln County, West Virginia, while teaching in the state of Florida in 1958, met and married the defendant, Paul Tate. They lived together for approximately one year when she returned to Lincoln County and obtained a divorce on March 10, 1959. Shortly thereafter, on April 16, 1959, the parties were remarried in Norco, Louisiana, where they resided until May 14, 1960,

when they moved to Nederland, Texas. The defendant apparently was a citizen of Texas and maintained a permanent mailing address at his parents' home in Corpus Christi though he had never resided at that address. The parties lived at Nederland from May 15, 1960, to July 5, 1961, and thereafter at Rosamond, California, from July 22, 1961, to March 14, 1962; Fanwood, New Jersey, from March 14, 1962, to August 20, 1962; and at Conneaut, Ohio, from August 22, 1962, until December 26, 1962, at which time plaintiff returned to Lincoln County, West Virginia, and seven days later, on January 2, 1963, brought the present action for divorce on the grounds of cruelty.

Defendant was served by publication only, no copy of the summons and complaint having been mailed to him, and the cause was heard and a divorce granted to plaintiff on February 6, 1963. On February 19, 1963, defendant, alleging that he first had learned on February 16, 1963, that the action had been instituted and a divorce granted, petitioned the court to set aside the decree and permit him to file an answer, which request was granted, and defendant then moved that the action be dismissed on the grounds the court lacked jurisdiction in that: (1) plaintiff did not meet the requirements of Code, 48-2-8, with regard to residence at the time of the institution of this action; and (2), plaintiff, knowing the specific address of defendant, failed to supply the clerk with that information thus rendering it impossible for the clerk to comply with the Rule 4(e)(1), R.C.P., and complete the service of process.

Plaintiff, in answer to the motion, contended that defendant had never fixed a marital domicile, thus never changing the legal residence of the plaintiff and that defendant had actual notice of the pendency of the divorce proceeding. In this regard, the evidence is uncontradicted that plaintiff maintained her voters' registration in Lincoln County during the course of the marriage and that during this period the defendant was continuously employed by the Lummus Company, general contractors, in an engineering capacity, moving from place to place upon completion of his work in any given location. Defendant testified that he considers

himself a citizen of Texas with his present legal residence in Ohio, and before that, in whichever state he happened to be working and residing. The trial court overruled the motion to dismiss and proceeded to hear the matter upon the merits.

To sustain her charge of cruelty, plaintiff testified that defendant forbade her visiting her parents [which she did anyway]; that relations became strained between them and she became very nervous; he bought her very few items of clothing; they lived in one home in Ohio for slightly more than a month that had no telephone or washing machine; defendant was very strict with money allowing her only $30.00 a week for groceries; one week before she left she was a complete mental wreck; defendant agreed that they should have no more children and said he would have an operation but failed to do so; and, they went out together very seldom. The aunt of plaintiff testified that she visited in plaintiff's home several times and defendant was "cool" to plaintiff and plaintiff was nervous. Plaintiff's mother also visited in plaintiff's home and testified that she couldn't "see any tenderness" in defendant's feelings for plaintiff; that plaintiff's mental condition on her return to Lincoln County was terrible; and that one time, after plaintiff had been busy all day moving, defendant came home and, upon finding "the meal wasn't on the table", became terribly upset. Plaintiff offered no evidence of physical cruelty.

Upon the conclusion of the hearing, the trial court granted a divorce to plaintiff and awarded her custody of the three children born of the marriage, to which action this Court granted an appeal on September 21, 1964. Errors assigned in this Court relate to the overruling of the motion to dismiss and the granting of a divorce to plaintiff.

Code, 48-2-4, as amended, provides:

> "A divorce from the bond of matrimony may be decreed:
> " . . .
> "(d) For cruel or inhuman treatment, . . .; cruel and inhuman treatment shall also be deemed to exist when the treatment by one spouse of an-

other, or the conduct thereof, is such as to destroy or tend to destroy the mental or physical well-being, happiness and welfare of the other and render continued cohabitation unsafe or unendurable; . . ."

In *Gallaher* v. *Gallaher,* 147 W. Va. 463, 128 S.E. 2d 464, there was no evidence of physical cruelty and the evidence of alleged "mental cruelty" was analogous to the evidence in this record. In the opinion of that case it was said: "The most that can be said from the evidence is that the marriage in question was not a sublimely happy one. . . . There is nothing in this record to show that the conduct of either party has been such as to destroy, or tend to destroy, the mental and physical wellbeing of the other or to render continued cohabitation unsafe and unendurable." The opinion in that case further noted that " 'Disavowals of love, expressions of hatred and the like, while the marital relations continues, do not constitute cruel and inhuman treatment of husband by wife.' Syl. Pt. 2, *Schutte* v. *Schutte,* 90 W. Va. 787, 111 S. E. 840. . . . The coldness and indifference asserted by the wife in support of her claim is likewise insufficient. *Davis* v. *Davis,* 137 W. Va. 213, 70 S. E. 2d 889; *Wills* v. *Wills,* 74 W. Va. 709, 82 S.E. 1092. Even if it could be said that the parties hereto were incompatible, incompatibility, without more, is insufficient to warrant a divorce. *Harbert* v. *Harbert,* 130 W. Va. 704, 45 S. E. 2d 15." It would thus appear that the plaintiff in the instant case has not established sufficient grounds for divorce, however, we need not decide that question in view of our holding that the trial court erred in failing to dismiss the case for lack of jurisdiction.

The applicable statute, Code, 48-2-8, provides:

"No suit for divorce shall be maintainable:

" (a) If the cause for divorce is adultery, whether the cause of action arose in or out of this State, unless one of the parties, at the commencement of suit, is a bona fide resident of this State; or

" (b) If the cause for divorce is other than adultery, unless one of the parties was, at the time the cause of action arose, a bona fide resident of this State and has been such a resident for at least one year next preceding the commencement of suit; or

" (c)   If the cause for divorce is other than adultery, unless one of the parties has, since the cause of action arose, become an actual bona fide resident of this State and has continued so to be for at least two years next preceding the commencement of suit, . . . ."

The only provision of this section which could give the trial court jurisdiction of this case is subsection (b) and it is the view of this Court that the plaintiff was not, when she brought her suit for divorce, "a bona fide resident of this State" who had been "such a resident for at least one year" prior to that date.

The word "resident", as used in divorce statutes, is almost uniformly construed as being synonymous with the word "domicile". *Gardner* v. *Gardner,* 144 W. Va. 630, 110 S.E. 2d 495; *Taylor* v. *Taylor,* 128 W. Va. 198, 36 S.E. 2d 601; *Boos* v. *Boos,* 93 W. Va. 727, 117 S.E. 616. While "A domicile once acquired is presumed to continue until it is shown to have been changed.", *Taylor* v. *Taylor, supra,* "So long as a married couple live together as husband and wife, the wife's domicile generally follows that of the husband. . . ." Syl. Pt. 2, *Gardner* v. *Gardner,* 144 W. Va. 630, 110 S.E. 2d 495. A person can have but one domicile, and a husband has the right to fix the domicile of himself and his wife, the wife's domicile merging in that of her husband, where such right is exercised in a reasonable and equitable manner and with honest intent. *Hall* v. *Hall,* 69 W. Va. 175, 71 S.E. 103. "The wife's domicile follows the husband. . . ." *Brinkley* v. *Brinkley,* 147 W. Va. 557, 129 S.E. 2d 436. When the plaintiff married the defendant in Florida, she acquired the domicile of her husband and her legal residence within the meaning of Code, 48-2-8, ceased to be in Lincoln County, West Virginia. It is unnecessary to this decision to determine her domicile between that time and December 26, 1962, when she left the place where she and her husband were living in Conneaut, Ohio, and again became a resident of Lincoln County, instituting this suit for divorce seven days later.

In view of this holding, it is unnecessary to pass upon the question of whether the failure to comply with Rule

4(e) (1), R.C.P., which provides in substance that where the residence of a nonresident defendant is known to the plaintiff the clerk *shall* serve such defendant my mailing a copy of the summons and complaint to such defendant at his place of residence, is jurisdictional. However, *cf.*: *Brinkley* v. *Brinkley*, 147 W. Va. 557, 129 S. E. 2d 436.

The judgment of the Circuit Court of Lincoln County, entered April 9, 1964, is reversed and the case remanded with directions to dismiss the complaint.

*Reversed and remanded.*