BESSIE L. BELCHER

*v.*

V. S. BELCHER

(No. 12543)

Submitted October 4, 1966. Decided December 6, 1966.

W. *Robert Carr, David W. Knight,* for appellant.

*Arthur F. Kingdon,* for appellee.

BERRY, JUDGE:

This action for a divorce was instituted in the Circuit Court of Mercer County, West Virginia, on January 26, 1965. On June 11, 1965, the Circuit Court dismissed the action on the ground that it did not have jurisdiction of the case. Upon application to this Court an appeal and supersedeas were granted to the judgment of the Circuit Court on December 13, 1965, and the case was submitted for decision on briefs at the September Regular Term, 1966, of this Court.

The plaintiff and defendant were married on June 17, 1924, at Princeton, Mercer County, West Virginia. The plaintiff, at the time of their marriage, had been a resident of Mercer County since she was eight years of age and the defendant came there about 1922. Some years before 1950 the defendant became engaged in the lumber business at Elk Garden, Virginia. He moved his lumber business to Bluefield, Mercer County, West Virginia in 1950, although they had both resided in West Virginia many years before the removal of his lumber business to West Virginia.

In June, 1961, they jointly purchased with their son and his wife an $18,000 farm in the State of Ohio, upon which a $25,000 home was built for the parents' use, but apparently never occupied. In August, 1961, their home and other real estate in Bluefield was sold at an

auction, with the statement made by the auctioneer that "Mr. and Mrs. Belcher are moving out of State and have instructed us to sell." The purchaser of the home in Bluefield was given possession November 15, 1961, after which they occupied a four room house located on the lumber business property. On about February 2, 1962, the plaintiff instituted a divorce action in the Circuit Court of Mercer County. In about two weeks the parties became reconciled and the divorce action was dismissed. They then moved into a trailer which they placed in a trailer camp at Bluefield, West Virginia. About May of 1962, the Belchers moved their trailer to Mt. Vernon, Ohio, where they lived as man and wife. On July 30, 1962, they purchased a home at 602 Newark Road, Mt. Vernon, Ohio, which they occupied as man and wife from September, 1962, until January, 1963, at which time the parties again had domestic difficulties. On or about January 12, 1963, the plaintiff instituted another divorce action against the defendant in the Circuit Court of Mercer County, at which time she alleged they were residents of Mercer County and that her permanent home for more than two years before the institution of this action had been in Bluefield, West Virginia. This was denied by the defendant's statement that they had lived there for a short time after vacating their home in Mercer County in November, 1961. On March 29, 1963, a property settlement in writing was made by the parties in which it was stated that the defendant agreed that Mercer County should remain the permanent legal residence of the parties if another divorce action was instituted by the plaintiff at a future time and that there would be no contest on the basis of residency. The defendant denied that they intended to make their permanent residence in Mercer County and insisted that he merely signed the agreement in order that they could get back together again because they had lived together for 40 years. This divorce action was dismissed in April, 1963, after which they returned to Ohio to live. However, it appears that

another four room house had been purchased by the parties in Mercer County on East Cumberland Road in May, 1963, which apparently was furnished in November, 1963, and had been occupied for a short time by the parties when the defendant came to Bluefield on business. It appears from the plaintiff's testimony that this house in Mercer County was occupied for some time by the plaintiff in 1964. She testified that she spent some time in Ohio in 1963, and she and her husband came to the home in Mercer County on January 15, 1964, and stayed until May 13, 1964. The defendant denies that he spent any length of time at this house in Bluefield. The Circuit Court found, from all the evidence, that the plaintiff was not domiciled in West Virginia until December, 1964, and therefore had not been domiciled in West Virginia for two years prior to the institution of this action, as required by law. Apparently the parties abandoned the home purchased at 602 Newark Road, Mt. Vernon, Ohio, and rented a house in Mt. Vernon, Ohio, in 1963. In September of that year they jointly purchased another house at 221 Newark Road, Mt. Vernon, Ohio, which they vacated in October 1964, because the defendant thought it was noisy at that location. They then jointly purchased another home at that time at 106 Greenway drive, Mt. Vernon, Ohio, which they still own and where the defendant was living at the time this action was instituted. The defendant's brother, sister and nephews, as well as his son and his son's family lived near Mt. Vernon, Ohio.

Both the plaintiff and defendant were registered to vote in Mercer County and both voted in West Virginia in the general election in 1964. They own property and pay taxes in both West Virginia and Ohio, filed joint income tax returns for the years 1962 and 1963 in Ohio and an estimated income tax return for the year 1964 in the State of Ohio. They had bank accounts in both West Virginia and Ohio, but the bulk of defendant's money, approximately $140,000, was in banks in Bluefield, West Virginia. The defendant had

a post office box at the Bluefield, West Virginia, post office, as well as in Ohio. Both the plaintiff and defendant were members of the Calvary Baptist Church in Bluefield, West Virginia, and neither of them possessed driver's license in the State of Ohio. The defendant had West Virginia automobile license tags on some automobiles owned by him but when the license expired on one of them he obtained Ohio license for the vehicle. Cemetery lots were purchased for both the plaintiff and defendant at the Woodlawn Cemetery in Mercer County.

It is the contention of the plaintiff that the trial court erred in finding that the parties moved to the State of Ohio in 1962 and established a marital domicile there, that the defendant is now presently living and domiciled in Ohio, that the plaintiff's domicile was in Ohio until 1964, and that the parties had not had a marital domicile in West Virginia subsequent to May, 1962, and in sustaining defendant's motion dismissing the action for lack of jurisdiction.

The evidence in this case clearly shows that the parties intended to and did move to Ohio in May or June, 1962. It clearly shows that they established a marital domicile in Ohio and spent considerable time in that State where they jointly purchased several homes, paid taxes, and filed income tax returns and estimated tax returns for at least three years. It is true that the evidence shows that considerable marital difficulties were experienced by the parties at various times and no doubt they are still experiencing such difficulties. However, that fact will not give jurisdiction to a Circuit Court in this State unless the statutory requirements with regard to residency are complied with.

In this connection, Code 48-2-8, provides that: "No suit for divorce shall be maintainable: * * * (b) If the cause for divorce is other than adultry, unless one of the parties was, at the time the cause of action arose, a bona fide resident of this State and has been such a resident for at least one year next preceding the com-

mencement of suit; or (c) If the cause for divorce is other than adultry, unless one of the parties has, since the cause of action arose, become an actual bona fide resident of this State and has continued so to be for at least two years next preceding the commencement of suit, and, in addition, it be shown either that the alleged cause for divorce was recognized, in the jurisdiction in which such party resided at the time the cause of action arose, as a ground for absolute divorce or for the same relief asked for in the suit in this State, or that the alleged cause of action arose more than five years before the commencement of suit: * * * ''

The allegations in the plaintiff's complaint are that she has been a resident of the State of West Virginia for more than two years next preceding the institution of this action which would indicate that she had been a resident of Ohio some time before the institution of the suit. However, at one place in her testimony she stated that she had been a continuous resident of West Virginia since she was eight years of age and if this contention were true she would have been a resident of the State of West Virginia at the time the cause of action arose and would have had to be a resident only for a period of one year next preceding the suit in order to confer jurisdiction on the Circuit Court. Code, 48-2-8(b); *Tate v. Tate,* 149 W.Va. 591, 142 S.E.2d 751. If the parties moved to the State of Ohio in 1962 and established a marital domicile, as all the evidence indicates was done in the instant case, the wife's domicile follows that of the husband and she would have been a resident of the State of Ohio. *Taylor v. Taylor,* 128 W.Va. 198, 36 S.E.2d 601; *Brinkley v. Brinkley,* 147 W.Va. 557, 129 S.E.2d 436; *Tate v. Tate, supra.*

Even though the plaintiff maintained her voting registration in West Virginia and retained her church affiliation she would cease to be a resident of this State when a marital domicile was established in Ohio with her husband. *Tate v. Tate, supra.*

There is no question but that considerable time was spent in Ohio by the parties living together as husband and wife, thereby establishing a marital domicile in that State. *Boos v. Boos*, 93 W.Va. 727, 117 S.E. 616. The evidence is conflicting as to the amount of time spent in each state, although it is clear from all the evidence that most of their time was spent in the State of Ohio and that they returned to West Virginia on numerous occasions and although the plaintiff indicates that she spent several months in Bluefield in either 1963 or 1964, the defendant says that she spent only a short time in 1963 or 1964 in Mercer County, West Virginia. However, the record is clear from the plaintiff's own testimony as to when they finally separated resulting in the institution of this action for divorce when she stated on direct examination by her own counsel, the following:

"Q. 119. When did you and Mr. Belcher finally separate and you sue him for divorce?

"A. Well, I left the residence the twenty-eighth day of December.

"Q. 120. Of 1964?

"A. Of 1964.

"Q. 121. And you haven't lived with him since that date?

"A. I have not".

As hereinbefore stated, the marital domicile of the wife follows that of the husband. *Sutton v. Sutton*, 128 W.Va. 290, 36 S.E.2d 608; *Brinkley v. Brinkley, supra; Tate v. Tate, supra.*

In an attempt to establish jurisdiction in the Circuit Court of Mercer County a property agreement was introduced into evidence by the plaintiff with a clause contained therein that the parties agreed that if a divorce suit was instituted jurisdiction for such suit would be in Mercer County. The parties can not confer jurisdiction on any court by an agreement. 11 M.J.,

Jurisdiction, §20; *Nolan v. Guardian Coal and Oil Co.,* 119 W.Va. 545, 194 S.E. 347; *Phillips v. Phillips,* 146 Fla. 311, 1 So.2d 186.

The *Sutton* case is quite similar to the case presented here. In that case there were many conflicting facts. The defendant had a place to live in Wood County, West Virginia, paid taxes in Wood County, had a cemetery plot in Wood County, West Virginia, but he testified that he lived in a hotel in St. Petersburg, Florida. In that case, as in this case, the defendant stated he intended that his domicile or residence be in Florida and this Court held that his residence was in Florida and that the Circuit Court of Wood County did not have jurisdiction to hear the action. The first point of the syllabus in the *Sutton* case reads as follows: "A person who has long been a resident of this state, but who removes from his dwelling house therein and goes to another state and resides there during the greater portion of each year thereafter, with the intention of remaining indefinitely, thereby establishes his domicile in and becomes a resident of the state to which he has so removed and ceases to be a resident of this state within the meaning of Code, 48-2-8."

Where the findings of fact of a trial court are based on conflicting evidence they will not be disturbed on appeal unless clearly wrong. *Taylor v. Taylor, supra; Sutton v. Sutton, supra.* In connection with this question it was held in the third point of the syllabus in the *Taylor v. Taylor, supra,* case, that: "In a divorce suit the finding of fact of a trial chancellor based on conflicting evidence will not be disturbed on appeal unless it is clearly wrong or against the preponderance of the evidence."

Under the evidence presented in the case at bar it can not be said that the trial court's finding of fact was clearly wrong. The plaintiff, notwithstanding her testimony, lost her residential status in West Virginia when the marital domicile was established in Ohio and

it would be necessary for her to reestablish her residence in Mercer County, West Virginia, for a period of two years before the Circuit Court of Mercer County would have jurisdiction of a divorce action instituted by her.

For the reasons stated herein, the judgment of the Circuit Court of Mercer County is affirmed.

*Affirmed.*