LAETITIA NATALIE CORBIN

*v.*

HOWARD J. CORBIN

(No. 13426)

Decided July 16, 1974.

968

*Jenkins, Schaub & Fenstermaker, John E. Jenkins, Jr., and John F. Wood, Jr.,* for appellant.

*Campbell, Love, Woodroe & Kizer, S. Clark Woodroe and John O. Kizer* for appellee.

NEELY, JUSTICE:

This is an appeal from a final order of the Circuit Court of Cabell County entered September 10, 1973 which affirmed in part and reversed in part a final order of the Domestic Relations Court of Cabell County entered on October 2, 1972 awarding the appellee alimony in the amount of $21,000 per year and child support for one female child in the amount of $6,500 per year.

The appellee, Laetitia Corbin, and the appellant, Howard J. Corbin, have been involved in protracted litigation concerning their domestic affairs since 1963 when Mrs. Corbin sued for a divorce which was awarded in the Domestic Relations Court of Cabell County in June 1963.

Mr. and Mrs. Corbin were married in 1953 in New York City and two children were born of their marriage, David Randolph Corbin in 1956 and Priscilla Anne Corbin in 1959. The parties separated in Huntington, West Virginia, in June 1962 and in January 1963 the parties entered into an agreement which was denominated a "property settlement agreement" but which in fact constituted a complete separation agreement, covering far more than the mere division of their property. This case concerns the proper interpretation of that agreement and the effect of that agreement, if any, upon the subsequent order of the Domestic Relations Court of Cabell County which awarded Mrs. Corbin the divorce and incorporated the property settlement agreement into the divorce decree. The provisions of the agreement at issue on this appeal are paragraphs 4, 18, and 19 which provide as follows:

> "4. *Support of Wife.* Husband shall pay to wife for her support and maintenance for the balance of her lifetime, or until her remarriage, or until

the death of husband, which ever period shall be shorter, the sum of $5,773.20 per year in equal monthly installments of $481.10 each, due on or before the 5th day of each month, the first installment to be paid on the date of the execution of this agreement.

\*    \*    \*    \*

"18. *Subsequent Divorce.* Husband and wife hereby covenant and agree that in the event any temporary or final judgment or decree of divorce or separation binding on husband and wife shall be entered in any action brought by either of them against the other, in any jurisdiction, such judgment or decree shall contain no provision for the support or maintenance of wife or the children contrary to the provisions of this agreement and that this agreement, unless otherwise required by the applicable law, may be incorporated in any such judgment or decree, by reference or otherwise, upon the request of either party, *but, notwithstanding such incorporation this agreement shall not be merged in any such temporary or final judgment or decree of divorce or separation between husband or wife, but, shall in all respects survive the same and be forever binding and conclusive upon husband and wife.* (Emphasis supplied by court.)

"19. *Partial Invalidity.* In the event that all or any part of this agreement shall be invalid, such invalidity shall not invalidate the whole agreement but the remaining portions of the agreement shall continue to be valid and binding."

Although paragraph 18 provides that the parties agree that no judgment or decree of divorce shall contain a provision for the support or maintenance of the wife or children contrary to the provisions of the agreement, and further provides that while the agreement may be incorporated into the decree, it is not to be merged in the decree, the final order of the Domestic Relations Court of Cabell County which awarded the divorce to Mrs. Corbin provided for alimony, support, and maintenance all denominated as such in the decree, and by specific language did merge the agreement into the decree. The relevant portions of the court's order provide as follows:

"IT IS FURTHER ADJUDGED, ORDERED AND DECREED that the Agreement bearing date the 2nd day of January, 1963, between Laetitia Natalie Corbin and Howard J. Corbin *is hereby approved and confirmed in its entirety and same is to be incorporated and to be made a part of this final Decree as if fully written herein, and each and every part thereof as the same pertains to the parties hereto, shall be enforceable by this Court.* (Emphasis supplied by court.)

\* \* \* \*

"IT IS FURTHER ADJUDGED, ORDERED AND DECREED that the defendant, Howard J. Corbin, shall pay to Laetitia Natalie Corbin, for alimony, support and maintenance for the balance of her lifetime, or until her remarriage, or until the death of the defendant, Howard J. Corbin, whichever shall be shorter, the sum of $5,773.20 per year, in equal monthly installments of $481.10 each, the first of said payments due on or before the 5th day of July, 1963, and on the 5th day of each and every month thereafter.

"IT IS FURTHER ADJUDGED, ORDERED AND DECREED that the defendant, Howard J. Corbin, shall pay unto Laetitia Natalie Corbin, plaintiff, for the support and maintenance of their son, David Randolph Corbin, the sum of $1,800.00 annually, payable in equal monthly installments of $150.00, each, due on or before the 5th day of each and every month, which payments shall continue until he becomes twenty-one (21) years of age or until his marriage or until his death, which ever event shall first occur, the first installment due and payable on or before the 5th day of July, 1963. The payments under this shall cease during the college school year if the son is receiving the payments to be made under paragraph 8 of the Agreement, provided that during the months of the college recess the monthly payments shall be made directly to the son.

"IT IS FURTHER ADJUDGED, ORDERED AND DECREED that the defendant, Howard J. Corbin, shall pay to Laetitia Natalie Corbin, plaintiff, for the support and maintenance of their daughter, Priscilla Anne Corbin, the sum of

> $1,800.00 annually, payable in equal monthly installments of $150.00 each, until Priscilla Anne Corbin becomes twenty-one (21) years of age or until her marriage or until her death, whichever event shall first occur, the first of said installments shall be due and payable on or before the 5th day of July, 1963, and on or before the 5th day of each and every month thereafter. The payments shall cease during the college school year if the said Priscilla Anne Corbin is receiving the payments to be made under paragraph 8 of the Agreement, provided that during the months of the college school recess payments shall be made directly to the daughter."

From 1963 until 1968 the parties fought about visitation rights and each party objected to the way in which the other party treated the children. In 1964 Mr. Corbin filed a petition in the Domestic Relations Court of Cabell County praying that the June 1963 decree be modified to release him from any further payment of alimony to Mrs. Corbin and further praying for transfer of the custody of the two children to him. During the pendency of the 1964 Cabell County proceeding, Mrs. Corbin took her side of the case to the Connecticut courts. Finally in 1966 Judge Daugherty of the Domestic Relations Court of Cabell County found Mrs. Corbin guilty of contempt and in 1968 as part of a general settlement of the questions in issue at that time, entered an order implementing an agreement between the parties to increase alimony to $6,600 per year and child support to $3,300 per year for each child. The order also recited a further agreement of the parties that the Domestic Relations Court of Cabell County had exclusive jurisdiction with respect to any matters arising from the property settlement agreement or any decree of the Domestic Relations Court, and further provided that should Mrs. Corbin institute proceedings in any other court, Mr. Corbin could reduce his alimony payments to $25 per month.

After the 1968 decree litigation was again commenced in West Virginia by Mr. Corbin who petitioned the Domestic Relations Court for custody of his son, David

Randolph Corbin. Mrs. Corbin responded by an answer and counterclaim in which she prayed for increased alimony and child support. The Domestic Relations Court separated the issues, and awarded custody of David Corbin to Mr. Corbin in December 1971 and in January and February of 1972 held hearings at which evidence was taken with regard to the requested increase in alimony and child support for Priscilla. After the 1972 hearings the Domestic Relations Court entered the order increasing alimony and child support which is the subject of this appeal.

During the suit for divorce in 1963 no evidence was introduced concerning the standard of living or earning abilities of the parties and no ruling was made on that subject. However, in the 1972 hearings it was established that at the time of separation the Corbins lived in a twelve-room house surrounded by an estate of approximately two and a half acres in the Southwood section of Huntington. There was a full time live-in maid and an additional person who did heavy cleaning once each week. The Corbins also had a summer cottage in Nantucket, Massachusetts, which they frequently visited, and the family had two cars and traveled extensively between New York and Huntington. Mrs. Corbin's exclusive occupation was as a wife and mother, and in that capacity the only housework which she performed herself was meal preparation.

By letter opinion the Domestic Relations Court found that Mrs. Corbin's earning ability in 1972 at the time of the hearing was not sufficient to warrant her leaving Priscilla to return to work. It was stipulated in the record and noted in the opinion that Mr. Corbin had between $25,000 to $30,000 a year in discretionary disposable income from which he could provide support to his former wife and his daughter. In light of the evidence the court then awarded $21,000 a year alimony to Mrs. Corbin plus $6,500 a year for child support for Priscilla.

Although the order of the Domestic Relations Court awarding the alimony and support was dated October 2,

1972, the alimony and support payments were made retroactive to February 1, 1972. Upon appeal to the Circuit Court of Cabell County, the Circuit Court affirmed the Domestic Relations Court as to all findings and awards except the provision for retroactive awards of alimony and support. The appellee has not assigned cross-error in this Court and, consequently, that finding of the Circuit Court is not in issue on this appeal.

The appellant argues that the evidence was insufficient to support the judgment of the Domestic Relations Court and that the court abused its discretion in awarding the increase in alimony and in refusing to consider the earning ability of Mrs. Corbin. The evidence, while in conflict, can be viewed as reasonably establishing that Mrs. Corbin was going into debt at a substantial rate. Mrs. Corbin testified that her expenses exceeded her income by approximately $1,473.53 every two months. At the time of the hearing Mrs. Corbin lived in Westport, Connecticut which is subject to a high cost of living, and Mrs. Corbin testified that the cost of supporting her daughter had doubled since 1968 as a result of inflation and additional expenses attendant to maintaining an older child. There was further testimony that Mr. Corbin gave Mrs. Corbin $4,800 in cash during 1971 in addition to the court awarded alimony and support and that Mr. Corbin frequently made gifts to Mrs. Corbin including a remodeling of part of her house worth $8,000, painting and remodeling worth another $500, a new roof for $1,200, a burglar alarm for $1,000, an Oldsmobile Cutlass for $3,560, a trip to Europe for $2,000, and since 1969 paid tuition at a private school for Priscilla. Mrs. Corbin testified that she was dependent upon these gifts and was fearful that Mr. Corbin would withdraw his bounty and reduce her to penury.

I

The record indicates that at the time the Corbins were married Mrs. Corbin had a rather substantial earning capacity, but the record further demonstrates that her earning ability in Westport, Connecticut was limited. Therefore, the Domestic Relations Court was entitled to

find in light of (1) Mr. Corbin's strong financial position; (2) Mrs. Corbin's limited earning capacity; and (3) Mrs. Corbin's need to care for her young daughter, that it was not necessary for Mrs. Corbin to seek employment in the labor market.

*W.Va. Code Ann.* 48-2-16 (1969) provides that in making an award of alimony the court:

> ". . . shall take into consideration, among other things, the financial needs of the parties, the earnings and earning ability of the husband and wife, the estate, real and personal, and the extent thereof as well as the income derived therefrom of both the husband and wife and shall allow, or deny, alimony or maintenance or modify any former order with relation thereto, in accordance with the principles of justice."

The amount of weight given to any one of these individual criteria is in the sound discretion of the trial court, and this Court will not reverse unless there has been an abuse of discretion. *Henrie v. Henrie,* 71 W.Va. 131, 76 S.E. 837 (1912); *Witt v. Witt,* 141 W.Va. 43, 87 S.E.2d 524 (1955); and *Bond v. Bond,* 144 W.Va. 478, 109 S.E.2d 16 (1959).

The evidence in this case clearly demonstrates that Mr. Corbin has discretionary income sufficient to permit him to pay the court's award of alimony, and that the standard of living which Mrs. Corbin will be permitted to enjoy under the court award is in keeping with the standard of living which she enjoyed as Mr. Corbin's wife. Although the norms of society are rapidly changing with regard to the role of women in the labor force, and while a militant and vocal minority proselytize for greater independence of married women, the fact remains that a majority of women in West Virginia, pursuant to long and well regarded tradition, elect to pursue careers as wives and mothers which forecloses other opportunities which might otherwise have been available to them. A trial court is entitled to take into consideration in awarding alimony both the age and family obligations of a woman as well as the degree to which she has relied to her detriment in choosing to be a housewife and mother rather than to

pursue her own independent career. A woman capable of re-organizing her life in such a way as to pursue a career and support herself in the labor market might not be entitled to an award of alimony, *Cooper v. Cooper,* 214 N.W.2d 682 (Minn. 1974) ; *Pollak v. Pollak,* 282 So. 2d 30 (Fla. 1973) ; and *Payton v. Payton,* 187 A.2d 899 (D. C. App. 1963), but a woman who has entered middle age, who has invested the best years of her life in the furtherance of her husband's career, and who is burdened with the onerous task of child raising may be entitled in the sound discretion of the trial judge to be supported in her accustomed life style if the husband's assets are sufficient to justify the award. *Reynolds v. Reynolds,* 72 W.Va. 349, 78 S.E. 360 (1913) ; *Henrie v. Henrie,* 71 W.Va. 131, 76 S.E. 837 (1912) ; and *Dayton v. Dayton,* 109 W.Va. 759, 156 S.E. 105 (1930). In this case Mrs. Corbin was married for ten years and is currently burdened with the care of a fifteen year old child as a result of that marriage. Therefore the Court is of the opinion that the law and evidence support the award of the trial court.

II

The second assignment of error is that the Domestic Relations Court did not have jurisdiction to modify the property settlement agreement executed by the parties in 1963. The question presented for decision is whether a property settlement agreement providing for periodic support payments to one party controls where those provisions are made part of the final decree for divorce. Although the law on this subject in West Virginia is less than crystal clear, there are certain general rules more or less applicable throughout the United States which West Virginia has followed in the past. A court with domestic relations jurisdiction has the right to fix alimony in its final decree and the parties cannot by contract or otherwise deny a court of that prerogative. *Smith v. Smith,* 125 W.Va. 489, 24 S.E.2d 902 (1943).

As a practical matter a satisfactory property settlement arrangement is frequently a condition precedent to an

agreement not to contest an action for divorce by the party against whom the divorce is sought, and lawyers seeking an uncontested divorce after an agreement has been reached limit their demands in court to those terms agreed upon by the parties. The law is clear in this State that where a Domestic Relations Court chooses not to award alimony in any form at the time of the granting of a divorce, it may not subsequently modify its decree to make such an award, regardless of the necessitous circumstances of one of the parties. *Childress v. Childress,* 156 W.Va. 839, 196 S.E.2d 657 (1973).

In determining the effect of a property settlement agreement, it is necessary to distinguish agreements which have merely been "confirmed" from those which have been "merged" in the divorce decree. Where a property settlement agreement has been merely confirmed, the court only certifies that the agreement is reasonable, that it was not obtained by fraud, coercion, or undue influence, and that it does not violate the public policy of this state. However, confirmation does not elevate a private contract between the parties to the status of a court judgment enforceable by civil contempt. Confirmation leaves the parties to such remedies for breach of the contract as they may have at law. Merger, on the other hand, makes the provisions of the property settlement agreement enforceable through the contempt procedures of the court granting the divorce and subjects the merged provisions to continuing court supervision, including revision in the event of a change in circumstances.

The general rule is well stated in 24 Am. Jur. 2d, *Divorce and Separation,* Sec. 670, which says:

> "Although there is some authority to the contrary, it is the almost universal rule that where a court has the general power to modify a decree for alimony, such power is not affected by the fact that such a decree for alimony refers to, or is based upon, or even incorporates, an agreement entered into by the parties to the action. Various reasons have been given for this rule. It has been

> said that where a divorce court makes a decree for permanent alimony in accord with an agreement, the agreement is merely advisory to the court, or merely supplies evidence upon which the court fixes the amount of alimony, and is not independently binding on the court, and does not affect its power to modify. Since the court is not bound by an agreement concerning the amount of alimony to be allowed to the wife, a fortiori the agreement cannot affect the power of the court to amend its decree as authorized by statute. Furthermore, according to the general rule, a decree for alimony entered by consent is subject to subsequent modification by the court for the reason that the validity of such allowance depends upon the judicial sanction of the court, and not upon the agreement of the parties."

In the case of *Bailey v. Bailey*, 127 W.Va. 826, 35 S.E.2d 81 (1945) the parties entered into a written agreement providing for a monthly sum of $130 to be paid to Mrs. Bailey by her husband, the amount of the monthly payments to be reduced as the support of the children became unnecessary due to death, maturity or marriage. Within a few days after the execution of the agreement, Mrs. Bailey brought suit for divorce, and in her bill of complaint prayed that the contract of July 31, 1937 "be affirmed." Mr. Bailey did not appear and Mrs. Bailey obtained her decree which fixed the amount of alimony at $130 per month, being the same amount fixed in the understanding executed by the parties. However, the decree did not otherwise follow nor affirm the terms of the written agreement and did not provide for the reduction of the monthly payments upon maturity, death or marriage of each of the children as did the contract. Mr. Bailey reduced his payments in conformity with the terms of the contract and Mrs. Bailey brought an action in contempt. This Court ruled:

> "The fact the Bailey may have been advised to the contrary and may have been told that the contract was not superseded by the decree but remained in effect, although it may mitigate the trial chancellor's pronouncement if he is found

guilty of contempt, cannot otherwise affect the result. Since the Circuit Court had complete control, regardless of the contractual relations of the parties, over fixing the amount of alimony and its time of payment, it follows that the parties cannot by contract alter or change the terms of its decree."

In the case of *Farley v. Farley*, 149 W.Va. 352, 141 S.E. 2d 63 (1965) a husband and wife entered into a property settlement agreement providing for the husband to pay the wife $20 per week. This agreement was "ratified, approved and confirmed" by the trial court; however, it was not specifically merged into the decree. The husband contended that this periodic payment was alimony, and under the rule in *State ex rel. Cecil v. Knapp*, 143 W.Va. 896, 105 S.E.2d 569 (1958) argued that the award of alimony was void as the husband was awarded the divorce. This Court ruled that a confirmed property settlement agreement created a valid and binding contract, and that although the $20 per week award was a periodic payment similar to alimony, it did not constitute alimony because a property settlement agreement can only be merged into a divorce decree by specific language to that effect. The Court said in *Farley*:

"The mere approval of a property settlement agreement in the divorce decree does not operate to make it a part of, and enforceable as, a decree of the court."

"Where the language in a divorce decree approves an agreement between the parties, instead of merging the agreement into the decree, such language appears to merely acknowledge it as a living instrument."

In the case at bar there is explicit language merging the property settlement agreement into the decree. The court specifically said that the agreement:

". . . is hereby approved and confirmed in its entirety and the same is to be incorporated and to be made a part of this final decree as if fully written herein, and each and every part thereof

as the same pertains to the parties hereto, shall be enforceable by this court."

The provision for enforceability by the court provides to both parties the strong remedy of civil contempt, which contemplates merger rather than confirmation. The appellant contends that paragraph 18 of the separation agreement which provides that:

". . . notwithstanding such incorporation this decree shall not be merged in any such temporary or final judgment or decree of divorce or separation between husband or wife, but, shall in all respects survive the same and be forever binding and conclusive upon husband and wife."

causes that last quoted provision also to be merged into the decree, which imposes a limitation upon the jurisdiction of the court to make an award in excess of the amount provided by the agreement.

This Court disagrees with the proposition that the power of the Domestic Relations Court can be limited by the parties. The Domestic Relations Court has inherent power to modify any decree in order to take into consideration changes in circumstances and the needs of justice, particularly when it can be called upon to use the harsh remedy of imprisonment to enforce its former order. This has been the law at least since the case of *Miller v. Miller*, 114 W.Va. 600, 172 S.E. 893 (1934). In *Miller* a wife had entered into a separation agreement which provided that the husband pay her the sum of $150 per month, and further providing that "this contract shall be submitted to the court and the court requested to adopt its provisions in full settlement of alimony of the party of the second part and the property rights between both parties." The court made reference to the contract and decreed that the husband pay the wife the sum of $150 per month as alimony. On appeal from a subsequent order reducing the award this Court held that the court had jurisdiction to reduce the amount of alimony when the husband suffered a financial reversal. The Court distinguished the wife's

right under the contract from her rights under the decree which merged the contract right and said:

> "What we have said refers of course only to alimony and is not to be interpreted as having any bearing upon the contractual rights of the respondent, if any she has, under the said agreement between her and her husband, dated February 12, 1931. In our decree proper reservation will be made to her."

The general rule is succinctly stated in a note at 166 A.L.R. 683 as follows:

> "Where a court has the statutory power to modify a decree for alimony or support, a provision in a decree or in the agreement on which it is based prohibiting the court from modifying the decree generally or under certain circumstances is generally held to be void, and the court may modify the decree notwithstanding such a provision."

The same note at 166 A.L.R. 693 makes the distinction which this Court has made with regard to mere approval and ratification of a property settlement agreement as opposed to merger of the provisions of the property settlement agreement into the decree. The text says:

> "It is held in the great majority of the cases that where the parties have made a written contract settling their property rights and this contract is approved by the court and is incorporated in the decree, it cannot be modified under the general power to modify a decree concerning alimony. Even where the agreement and decree provide that the husband shall make periodic payments to the wife, the majority of the courts hold that it is not a provision for alimony, and the decree cannot be modified, where the payments are in consideration of a transfer of property or are in consideration of the release of dower or other property rights."

Therefore this Court holds that the trial court did not err in granting an increase in both alimony and child support, as under the original decree the contract was

merged, enforceable by the contempt remedy, and therefore, the Domestic Relations Court retained jurisdiction to modify it.

## III

The last assignment of error is that the Domestic Relations Court erred in providing that Mr. Corbin's support for his daughter, Priscilla, continue until she reaches the age of twenty-one. In support of that proposition appellant cites *W.Va. Code Ann.* 48-2-15 (1969) which provides:

> "Upon ordering a divorce, the court may make such further order as it shall deem expedient, concerning the maintenance of the parties, or either of them; and upon ordering the annulment of a marriage, or a divorce, the court may make such further order as it shall deem expedient, concerning the care, custody, education and maintenance of the *minor children*, . . . ." (Emphasis supplied by court.)

Appellant maintains that by virtue of *W.Va. Code Ann.* 2-3-1 (1974) which established complete legal capacity for persons eighteen years of age or older the definition of the term "minor children" as used in *W.Va. Code Ann.* 48-2-15 (1969) has been changed to reduce to eighteen the number of years during which a court may order a father to support his child. Furthermore *W.Va. Code Ann.* 2-2-10 (aa) (1973) provides:

> "The words 'infant' and 'minor' mean persons under the age of eighteen years as such words are used in this Code or in rules and regulations promulgated by the supreme court of appeals; . . . ."

Although *W.Va. Code Ann.* 2-3-1 (1974) specifically provides:

> "[T]hat any order or mandate providing for payment of child support for any person up to the age of twenty-one years contained in any decree or order of divorce or separate maintenance or in any order in any nonsupport or bastardy proceeding, which decree or order was entered prior to

"June nine, one thousand nine hundred seventy-two, may by order of the court be terminated as to such person upon such person attaining the age of eighteen years. . . ."

the Court holds that this language is permissive and not mandatory. The original order awarding child support was entered in 1963 when the Domestic Relations Court had jurisdiction to award child support until the age of twenty-one. While *W.Va. Code Ann.* 2-3-1 (1974) permits a court which has previously awarded child support to age twenty-one to modify the decree to terminate the support at age eighteen, such court is not required to do so and the matter rests in the sound discretion of the trial court.

For the foregoing reasons the judgment of the Circuit Court of Cabell County is affirmed.

*Affirmed.*