ANDREE LEE SANDUSKY

*v.*

PAUL EDWARD SANDUSKY

(No. 14677)

Decided February 3, 1981.

*McCamic & McCamic and Jolyon W. McCamic* for appellant.

*Camilletti & Camilletti and Gary Sacco* for appellee.

PER CURIAM:

This is an appeal by Paul Sandusky from a final divorce decree entered by the Circuit Court of Ohio County on August 10, 1979. Mr. Sandusky contends that the court erred in: (1) granting a divorce on the ground of cruelty; (2) granting exclusive possession and use of the parties' personal property to the wife; (3) granting an excessive award of child support and alimony; and (4) awarding attorney fees to the wife. We agree in part and reverse.

Mrs. Sandusky filed a petition for divorce in November of 1978, alleging that she and the appellant were married in 1963, that they had one child, and that the appellant was guilty of cruel and inhuman treatment. A hearing was held

in the matter on May 23, 1979. Mrs. Sandusky testified that the appellant had slapped her on the face on two different occasions; had called her a whore, a tramp, and a slut; had frequently accused her of having affairs; and had on frequent occasions absented himself from their home for lengthy periods without telling her where he was going. Her testimony was corroborated in part by that of Mrs. Comer, a neighbor of the Sanduskys, who testified with regard to the frequent absences of Mr. Sandusky and in general about the discontent in the Sandusky household. The appellant admitted that name-calling had occurred in the past and also admitted that he was frequently away from home but attributed the absences to the necessity of him traveling away from home to teach, and to the fact that he had to visit his family (parents and siblings) who lived in Pennsylvania.

In its findings of fact, the trial court found, among other things, that:

> [T]he Defendant has been guilty of cruelty toward the Plaintiff, in that he did strike her, belittle and criticize her in front of others, and further that the Defendant did absent himself on numerous occasions for various lengths of time. The Court does further find that the actions of the Defendant as described above have seriously affected the health and well-being of the Plaintiff, rendering further cohabitation between the parties unsafe and unendurable.

In the divorce decree entered on August 10, 1979, the court awarded Mrs. Sandusky custody of the couple's infant child and granted the appellant reasonable visitation rights. The court also ordered that the appellant pay Mrs. Sandusky $25.00 per month alimony and $150.00 per month child support. In addition, the appellant was charged with paying reasonable medical and dental expenses for the child and with maintaining health insurance on him. The decree also awarded Mrs. Sandusky exclusive possession and use of one of the couple's three automobiles and their jointly-owned residence, along with all personal property located therein, and required the

appellant to continue making the mortgage payments on the house.

The appellant's first contention is that the evidence does not support the granting of a divorce on the ground of cruelty. *W.Va. Code*, 48-2-4(a) (4). We find this contention to be without merit. The findings and conclusions of the trial court are amply supported by the evidence and more than satisfy the statutory definition of cruel or inhuman treatment and, though the evidence was conflicting on some points, the trial court properly resolved those conflicts in favor of the appellee. Under W.Va.R.C.P. 52(a) findings of fact cannot be set aside unless clearly erroneous and due regard is to be given to the opportunity of the trial court to judge the credibility of the witnesses. This rule is, of course, consistent with our case law that, "[i]n a divorce suit the finding of fact of a trial chancellor based on conflicting evidence will not be disturbed on appeal unless it is clearly wrong or against the preponderance of evidence." Syl. pt. 4, *Belcher v. Belcher*, 151 W.Va. 274, 151 S.E. 2d 635 (1966), *quoting*, syl. pt. 3, *Taylor v. Taylor*, 128 W.Va. 198, 36 S.E. 2d 601 (1945). In addition, although the trial court made no finding on this point, there is unrebutted testimony that the appellant on frequent occasions falsely accused his wife of adultery, which is expressly deemed cruel treatment by our divorce statute. *W.Va. Code*, 48-2-4(a) (4).

The appellee's testimony was adequately corroborated. We held in *Hurley v. Hurley*, 127 W.Va. 744, 34 S.E. 2d 465 (1945) that where a party relies on several acts of cruelty as grounds for divorce, as in the case before us, every act need not be corroborated by a supporting witness. Since a neighbor of the appellee confirmed her testimony in certain material respects, we conclude there was sufficient evidence to satisfy the corroboration requirement of *W.Va. Code*, 48-2-10.

The appellant's second assignment of error is that the court erred in granting exclusive possession and use of the personal property of the parties to the wife. Appellant relies on our recent case of *Murredu v. Murredu*, 160 W.Va. 610, 236 S.E. 2d 452 (1977) where, citing *Wood v. Wood*, 126

W.Va. 189, 28 S.E. 2d 423 (1943), we held in Syllabus point 3 that, "[u]nder the provisions of W.Va. Code, 48-2-21, in the absence of a specific request for possession of enumerated personal property, the trial court is not authorized to award ownership of personal property in a divorce action."

In this case, the appellee during the divorce hearing requested, and the trial court granted, exclusive use and possession of the personal property located in the marital home. We are of the opinion that the trial court had the authority to make this award under *W.Va. Code*, 48-2-15, as an incident to its award of alimony, custody and maintenance of the child. The record is unclear, however, as to the nature and ownership of the personal property located in the home. Since we are reversing and remanding this case on the issue of alimony, support and maintenance, questions as to ownership, possession, and use of particular items of personal property can, if necessary, be addressed below under the provisions of *W.Va. Code*, 48-2-15,21 and our decisions in *McKinney v. Kingdon*, 162 W.Va. 319, 251 S.E. 2d 216 (1979), and *Murredu v. Murredu, supra.*

The appellant's third contention is that the trial court's award of alimony and child support was excessive.

The trial court ordered the appellant to pay $25.00 per month alimony, $150.00 per month child support, and $796.00 per month in mortgage payments on the marital home, for a total monthly payment of $971.00. The appellant's only income at the time of the hearing was a $725.00 monthly disability payment. He was not employed and no evidence was presented concerning his prospects for employment. There was testimony that he owned a gun collection worth $20,000 but there was a bank lien against the collection. The appellant contends the court's award was excessive, since it exceeded his monthly earnings by $236.00. Appellant also points out that Mrs. Sandusky had a monthly income of $700 and that, in addition to the mortgage payments, he had approximately $1,250.00 in debts.

We agree that the award was excessive in the circumstances of this case. Although the amount of alimony and

child support is largely in the discretion of the trial court, *see, e.g., Nichols v. Nichols,* 160 W.Va. 514, 236 S.E. 2d 36 (1977), such discretion is not unlimited and in this case the trial court exceeded those limits and abused its discretion.

Our reversal is based solely on the excessive amount of alimony and child support awarded. Although the trial court expressly awarded only $25.00 in alimony, we consider the provision in the divorce decree requiring appellant to continue paying the mortgage indebtedness as constituting in part alimony. There is no question that a circuit court in a divorce action can properly order a party to continue making mortgage payments under *W.Va. Code,* 48-2-15. We approved such an award in *Kinsey v. Kinsey,* 143 W.Va. 574, 103 S.E. 2d 409 (1958). Other courts having occasion to consider this question have uniformly approved such an award. *Bowman v. Bowman,* 29 Cal. 2d 808, 178 P. 2d 751 (1947); *Arakaki v. Arakaki,* 54 Haw. 60, 502 P. 2d 380 (1972); *Bryant v. Bryant,* 411 A. 2d 391 (Me. 1980). The Maine Court in *Bryant* cites our decision in *Kinsey* with approval and makes the following perceptive remarks concerning this question:

> We reject the notion that the term 'alimony' excludes anything but direct payments to the payee spouse. Payments to a third party for the benefit of the other spouse, whether in the form of mortgage payments or health and life insurance, are the practical equivalent to both spouses of direct payments, but carry the added feature of assuring the court and the payor spouse that the money will in fact be applied to meet the payee's identified needs. [411 A. 2d at 394]

Returning to the question of the amount of the alimony and child support awarded, the long-standing general rule in this state is that payments of alimony and child support, at least in the ordinary case, are to be made from a party's income. *See* syl. pt. 3, *State ex rel. Cecil v. Knapp,* 143 W.Va. 896, 105 S.E. 2d 569 (1958); syl. pt. 1, *Tressler v. Tressler,* 118 W.Va. 251, 189 S.E. 820 (1937); *Games v. Games,* 111 W.Va. 327, 161 S.E. 560 (1931); syl. pt. 4, *Sperry v. Sperry,* 80 W.Va. 142, 92 S.E. 574 (1917); syl. pt. 8, *Reynolds v. Reynolds,* 68

W.Va. 15, 69 S.E. 381 (1910). Consequently, an alimony and child support award must not be disproportionate to a party's ability to pay as disclosed by the evidence before the court. *See*, e.g., *Miller v. Miller*, 114 W.Va. 600, 172 S.E. 893 (1934); *Watson v. Watson*, 113 W.Va. 267, 168 S.E. 373 (1933). Based on these principles we held in the second syllabus of *Tressler v. Tressler*, *supra*, that an award of alimony and child support in excess of the husband's income was excessive.

After a careful review of the evidence and all the circumstances in this case, we conclude that the trial court erred in awarding alimony and child support in excess of the appellant's income.

The appellant's contention that the award of attorney's fees is excessive, however, is without merit. This is a matter within the sound discretion of the trial court and in the circumstances of this case, we find nothing indicating such discretion was abused. *See*, e.g., *Johnson v. Johnson*, 159 W.Va. 434, 223 S.E.2d 195 (1976).

For the foregoing reasons we reverse the judgment of the Circuit Court of Ohio County and remand for further proceedings.

Justice Caplan participated and concurred in this decision but departed from the Court prior to the preparation of the opinion. Justice McHugh did not participate in the consideration of this case.

*Reversed and remanded.*