388 S.E.2d 848

Barbara Jean KOPPEL

v.

Donald M. KOPPEL, M.D.

Nos. 18660, 18659.

Supreme Court of Appeals of West Virginia.

Dec. 5, 1989.

Ross Maruka, Fairmont, for Donald M. Koppel, M.D.

James A. Liotta, Fairmont, for Barbara J. Koppel.

PER CURIAM:

Barbara Jean Koppel and Donald M. Koppel were married on December 21, 1957. They lived together as husband and wife until they separated on September 3, 1985, and filed for divorce. On November 6, 1985, the Circuit Court of Marion County entered a temporary order which required Donald Koppel to pay Barbara Koppel $1,100.00 in monthly alimony. The parties were divorced on October 10, 1986, and at that time the court entered an order which temporarily reduced alimony to $550.00 per month. The court deferred a final alimony ruling until the parties made an equitable distribution of the marital assets.

The parties were referred to the Family Law Master, and on April 16, 1987, they met with the Master and informed him they had reached agreement on the equitable distribution of the marital property. The only issue that remained in dispute was the amount of alimony, if any, Donald Koppel should pay to Barbara Koppel. Testimony was taken, and on April 20, 1987, the Family Law Master rendered his findings of fact, conclusions of law, and recommendations. He recommended that Donald Koppel pay Barbara Koppel $1,000.00 per month for ten years, such payments to survive the death of Donald Koppel but not the remarriage of Barbara Koppel.

Donald Koppel filed a petition for review of the findings, conclusions and recommendations of the Family Law Master. The matter was heard by the Circuit Judge, the Honorable Rodney B. Merrifield, on September 17, 1987. The court entered an order on March 29, 1988, which differed from the Family Law Master's recommendation. The court ordered Donald Koppel to pay the sum of $48,000.00 to Barbara Koppel at the rate of $500.00 per month, such payments was to survive the death of Mr. Koppel or the death or remarriage of Mrs. Koppel. Barbara Koppel and Donald Koppel appeal this order, and the two appeals have been consolidated.

When Donald and Barbara Koppel were married, Dr. Koppel had obtained his degree as a medical doctor and Mrs. Koppel was employed as a nurse. Subsequent to their marriage, they moved to West Virginia and Dr. Koppel obtained a position as a physician at Fairmont Clinic. Mrs. Koppel quit work at Dr. Koppel's request so she could raise their child and keep up the household. She did not work throughout the duration of the marriage.

Dr. Koppel has an income of $70,000.00, and receives annual bonuses in the range of $6,000–$8,000. Mrs. Koppel has moved to Half Moon Bay, California, and is currently employed as a nurse at Kaiser Permanente, a health care facility. Her salary is estimated at between $16,000–$30,000 a year, depending on the number of hours and overtime worked.

The marital property was divided pursuant to an agreement between the parties. They agreed to divide equally the proceeds of the sale of the marital residence. The current market price of the marital residence was approximately $98,000.00.[1] Each party retained ownership of an Individual Retirement Account. The value of the husband's account was $9,467.00 on the date of the property settlement agreement, and the value of the wife's was $7,809.00. Dr. Koppel retained ownership of the 1983 Mercedes Benz and Mrs. Koppel retained ownership of the 1979 Cadillac. Mrs. Koppel kept her jewelry, appraised at $16,775.00 but with a replacement value of

---

1. It was reported to the Court at oral argument that the house had been sold, but the record does not reflect the sale price.

approximately $100,000.00 and he likewise kept his jewelry, valued at approximately $13,000.00. Each party is entitled to an equal portion of a retirement fund valued at $297,000.00 or more. Dr. Koppel received two-thirds of the parties' art collection and Mrs. Koppel received one-third. The unequal distribution in this case was due to an agreement between the parties that the husband should receive more than a one-half share due to the fact that he received a portion of the artwork by means of an inheritance. The appraised value of the entire art collection is $600,000.00. The parties also retained ownership of their respective life insurance policies, Mrs. Koppel's policy was valued at approximately $13,297.47 and Dr. Koppel's policy was valued at approximately $18,657.06.

Subsequent to the divorce, Dr. Koppel found financial means sufficient to buy a new home for $220,000.00, and other major expenditures, although at least partially with money borrowed from his mother. Dr. Koppel also stands to inherit a substantial amount of money from his uncle's estate, which is estimated at $4.5 million. He disputes that he will receive a significant amount from this estate due to executor and legal fees. On the other hand, Mrs. Koppel lived with her sister in California for a long period of time because she could not afford to rent or buy a suitable apartment or home with her income, due to the high price of property in that area.

■■■ West Virginia Code § 48–2–16 (1986) sets forth the factors to consider in determining an amount of alimony if such amount cannot be agreed upon by the parties, which in pertinent part includes:

(1) The length of time the parties were married; ...

(3) The present employment income and other recurring earnings of each party from any source;

(4) The income-earning abilities of each of the parties, based upon such factors as educational background, training, employment skills, work experience, length of absence from the job market and custodial responsibilities for children;

(5) The distribution of marital property ... insofar as the distribution affects or will affect the earnings of the parties and their ability to pay or their need to receive alimony ...;

(6) The ages and the physical, mental and emotional condition of each party;

(7) The educational qualifications of each party;

(8) The likelihood that the party seeking alimony ... can substantially increase his or her income-earning abilities within a reasonable time by acquiring additional education or training; ...

(14) The financial need of each party.

In *Molnar v. Molnar*, 173 W.Va. 200, 314 S.E.2d 73 (1984) we stated that in the case of an "older dependent spouse who has a full-time job that appears commensurate with his or her educational background and skills ... a circuit court should consider an alimony award based upon the traditional factors...." *Id.* 173 W.Va. at 205, 314 S.E.2d at 79. Furthermore, this Court found that in addition to the statutory criteria, "we have considered the age and health of the parties, their standard of living, and the duration of the marriage...." *Id.* 173 W.Va. at 204, 314 S.E.2d at 78.

Applying the statutory criteria of W.Va. Code § 48–2–16 and the other factors set forth in prior cases, we believe the circuit court entered an alimony award that was against the preponderance of the evidence. The evidence in this case reveals that the parties were married almost 29 years and that Mrs. Koppel gave up a career in nursing to remain at home. In *Corbin v. Corbin*, 157 W.Va. 967, 206 S.E.2d 898 (1974), we found that in awarding an amount of alimony, consideration is to be given to the fact that a spouse has "relied to her detriment in choosing to be a housewife and mother rather than pursue her own independent career." *Id.* 157 W.Va. at 975–976, 206 S.E.2d at 904. When Mrs. Koppel attempted to gain employment subsequent to her divorce, she discovered that her nursing skills were outdated. Her present job at Kaiser Permanente is as a nurse and they have provided training for her to

bring her up to par, but she nevertheless has lost out on years of experience. Subsections 4, 7 and 8 of W.Va.Code § 48–2–16 relate to this fact. A court is to consider the educational qualifications of each party and the likelihood that the party seeking alimony could substantially increase his or her income-earning ability within a reasonable time by acquiring additional training. The court is also to consider length of absence from the job market. Mrs. Koppel holds a nursing degree, but the years she was at home and not in the workforce are adverse factors that cannot be easily compensated by additional training. The additional training received by her through her current employer works merely to bring her skills up to an acceptable level.

Other factors to consider pursuant to W.Va.Code § 48–2–16 deal with the financial posture of the parties. Subsection 3 provides that a court is to consider the present employment income and other recurring earnings of each party from any source. Dr. Koppel's annual salary, including bonuses, is approximately $76,000.00–$78,000.00. Further, he is an heir to a substantial estate. As a medical doctor, he also has a superior income-earning ability. *See* W.Va.Code § 48–2–16(b)(4).

Dr. Koppel has made the argument, by referring to Subsection 5 of W.Va.Code § 48–2–16, that Mrs. Koppel will be able to earn income sufficient to live on because she has received income producing property pursuant to the distribution of the marital property. We accord little merit to his argument, for he likewise received property in the marital distribution that he could use to supplement his salary. The financial need of each party is also a consideration in the determination of alimony. We believe the evidence has shown that Mrs. Koppel needs more than the amount of alimony awarded by the circuit court in order to maintain a lifestyle to which she has been accustomed.

West Virginia Code § 48A–4–10(c) (1986) provides that:

[t]he circuit court shall examine the recommended decision of the master, along with the findings and conclusions of the master, and may enter an order in conformance with the recommended decision, may recommit the case, with instructions, for further hearing before the master or may, in its discretion, enter an order upon different terms, as the ends of justice may require....

In Syl. Pt. 1 of *Sandusky v. Sandusky*, 166 W.Va. 383, 271 S.E.2d 434 (1981), we stated that " '[i]n a divorce suit the finding of a trial chancellor based on conflicting evidence will not be disturbed on appeal unless it is clearly wrong or against the preponderance of the evidence.' " We believe the circuit court's determination to enter an order making an award of alimony different than the recommended amount of the Family Law Master was not required by the "ends of justice" and was against the preponderance of the evidence.

Therefore, the March 29, 1988, order of the Circuit Court of Marion County is reversed and this case is remanded to such court with instructions that an order in accord with the recommendations of the Family Law Master be entered.

Reversed and remanded.