413 S.E.2d 676

**Reta Mae BLACKHURST, Plaintiff Below, Appellant,**

v.

**Arthur Allen BLACKHURST, Defendant Below, Appellee.**

**No. 20077.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 24, 1991.

Decided Dec. 6, 1991.

Rehearing Denied Feb. 13, 1992.

James A. Matish, Clarksburg, for appellant.

Thomas R. Michael, Michael & Kupec, Clarksburg, for appellee.

PER CURIAM:

Reta Mae Blackhurst (the wife) appeals a final order of the Circuit Court of Harrison County, dated December 6, 1990, modifying her alimony award. The primary issue on this appeal is whether the trial court had the jurisdiction to reduce monthly alimony payments from $1,927.32 to $50.00 because of the impecunious status of Arthur Allen Blackhurst (the husband). We find that the trial court did have jurisdiction to modify the alimony payments. Accordingly, we affirm the trial court's final order.

In 1980, the parties were divorced. They executed a property settlement agreement in which the husband agreed to pay the wife $1,250 per month in alimony. The agreement also provided for cost-of-living adjustments based on inflation.[1] By the time this dispute arose, the alimony payment had increased to $1,927.32.

In December, 1987, the husband decided to decrease the alimony payment to $700 per month. After April of 1988, he ceased making alimony payments altogether. Consequently, the wife filed a petition for contempt in the Circuit Court of Harrison County. By an order entered April 4, 1989, the circuit court found the husband approximately $37,000 in arrears and awarded the wife this amount plus interest.

Meanwhile, the husband filed a petition to modify the divorce decree because his earning capacity had significantly de-

---

1. The husband was also paying his wife's medical insurance premium totaling $83.14 per month.

creased.[2] Hearings were held before a family law master to determine the husband's financial status. The family law master found that the husband's financial condition warranted reducing his alimony payment to $50.00 per month. The family law master's recommended decision was adopted by the circuit court in an order dated December 6, 1990, and was applied retroactively to January 1, 1990.

The wife's principal argument on appeal is that the trial court erred when it amended the alimony award provided for in the 1980 property settlement agreement. The wife contends that because there is no language in the agreement that permits court modification, and because the agreement specifically states that during years eight through fifteen of the settlement agreement alimony may be terminated only by the death of either party or the remarriage of the wife, the trial court was without jurisdiction to modify the alimony award.

The husband relies, as did the circuit court, on *In re Estate of Hereford*, 162 W.Va. 477, 250 S.E.2d 45 (1978). In *Hereford*, we sought to resolve some of our previous domestic relations cases where we had drawn some rather fine linguistic distinctions to decide whether a property settlement agreement is incorporated into a final divorce decree. The consequences of these distinctions were substantial. If the agreement was not "merged" into the decree, it was not subject to the court's continuing jurisdiction. As a consequence, arrearages in alimony could not be enforced in contempt proceedings, and the court lacked jurisdiction to modify the award.

Enforcement of any arrearages could only be obtained in a separate action on the agreement. *See Beard v. Worrell*, 158 W.Va. 248, 212 S.E.2d 598 (1974); *Corbin v. Corbin*, 157 W.Va. 967, 206 S.E.2d 898 (1974).

In *Hereford*, we held that when the final decree indicates that the court approves of a property settlement agreement, the terms of both alimony and child support awards are subject to future judicial control. In order to avoid the trial court's continuing jurisdiction, the agreement must expressly provide otherwise. Furthermore, as we stated in Syllabus Point 5, the court must approve the language used:

"In all domestic relations cases where the final order is entered after 1 February 1979 there shall be no special legal effect in the divorce decree attached to the words 'merged,' 'ratified,' 'confirmed,' 'approved,' 'incorporated,' etc., *and where the parties and the court wish to do something other than award judicially decreed periodic payments for alimony or alimony and child support enforceable by contempt and subject to modification by the court, the parties must expressly set forth the different terms to which they agree and the court must expressly indicate his approval of their agreement.*" (Emphasis added).

*See also* W.Va.Code, 48–2–16(a) (1984).[3]

Here, the final divorce decree stated that the court ratified, approved, and confirmed the property settlement agreement.[4] There was no language in

---

**2.** At the time of the divorce, the husband was the owner and president of Al Schroath Oldsmobile and was also self-employed as a property owner/developer. His annual income was between $115,000 and $200,000. In 1983, the husband was disabled and was unable to continue working. He now receives $791 per month from Social Security disability. The record does not disclose the wife's income. She has sold the family home, which she received under the property settlement agreement, for a net amount of $130,000 after paying off the deed of trust. She also has bonds worth $30,000, which she had inherited from her father.

**3.** W.Va.Code, 48–2–16(a), provides, in pertinent part:

"Any award of periodic payments of alimony shall be deemed to be judicially decreed and subject to subsequent modification unless there is some explicit, well expressed, clear, plain and unambiguous provision to the contrary set forth in the court approved separation agreement or the order granting the divorce."

**4.** Specifically, the final divorce decree stated:

"And it appearing to the Court that Reta Mae Blackhurst and Arthur Allen Blackhurst have entered into a Property Settlement Agreement, in writing, bearing the date the 23rd day of June, 1980, a copy of which was introduced into evidence at the hearing in this

either the final divorce decree or the agreement limiting the court's jurisdiction to modify the alimony award.[5] Indeed, the final divorce decree provides for monthly alimony payments of $1,250 per month "beginning with the month of January 1, 1981, and continuing ... thereafter until ... the further order of this Court." (Emphasis added). Consequently, *Hereford* does apply, and the circuit court had the authority to modify the alimony award.

In the alternative, the wife contends that the amount of the modification was erroneous. Although the husband had little cash available and a small income, the wife argues that he owned several pieces of real estate in which he had equity of over $450,-000. The husband vigorously disputes this factual allegation. The husband contends that he had to file bankruptcy in June, 1989, and that the bankruptcy schedules, which were filed below, prove otherwise. Most of the husband's real estate holdings are encumbered with sizable deeds of trust. The husband argues that the bankruptcy court is in control of this property and has begun to liquidate it. He asserts that his wife is aware of his predicament because she appeared in the bankruptcy proceeding. We have no need to resolve this factual issue. However, the wife is not foreclosed from filing for a modification of alimony because under *Hereford* the circuit court has continuing jurisdiction.

Therefore, the judgment of the Circuit Court of Harrison County is affirmed.

Affirmed.

matter, and that said Agreement is fair and equitable, it is therefore ADJUDGED, ORDERED and DECREED that said Agreement be, and the same is hereby ratified, approved and confirmed as a settlement of property rights of the parties hereto."

5. The language in the agreement relied on by the wife prohibits the trial court from *terminating* alimony unless either party dies or the wife remarries. There is no clause in the agreement which explicitly prohibited the trial court from modifying the award after seven years of payments had been made.